No. 2575.

HARVEY D. YOUNG ET AL. *v.* FRANK KUHN.

1. LIBEL.—Suit for libel upon two newspaper publications, the first, August 9, 1886, charging the plaintiff with selling diseased and unwholesome meat; the other, September 6, 1886, containing what purported to be the evidence taken in a complaint against the plaintiff for selling diseased meat, on which examination the plaintiff had been discharged. The defendant pleaded the truth of the charge on the trial. On the trial the defendant offered to prove that the publication of September 6 was a truthful report of the testimony taken upon the examination. On objection the testimony was excluded. *Held:*

(1) While under the pleadings the defendant could prove the truth of the charge, this could not be proved by this evidence.

(2) The action was not upon the report as untrue, so that its truth was not in issue.

(3) The testimony was properly excluded.

2. INCONSISTENT PLEADINGS.—Defendant having pleaded the truth of the matter charged to be libelous, and also a general denial, it was error to allow plaintiff to read in evidence from the plea so much as alleged the truth of the publications, for purpose of showing motive. Such admission is inconsistent with the statutory right to file inconsistent defenses. (Rev. Stats., 1262.)

3. WEALTH OF DEFENDANT IN LIBEL SUIT.—It is inadmissible to plaintiff in a libel suit to show that the defendant is wealthy. Such testimony improper, either to show actual damages or as guide in fixing exemplary damages.

4. CHARGE OF COURT.—In this case it was proper for the judge to charge that the publications were libelous per se.

APPEAL from Bowie. Tried below before the Hon. W. P. McLean.

September 16, 1886, appellee Kuhn brought suit against the appellants, the petition charging that the said defendants conspired with each other, and acting together, did on or about the ninth day of August, 1886, falsely, maliciously and scandalously write and publish, and cause and procure to be written and published, a certain false, scandalous and malicious libel of and concerning the plaintiff, containing therein the false, scandalous, defamatory and opprobious matters following, of and concerning the said Frank Kuhn, to wit: "Diseased Beef: Mr. Editor, in the interest of law, good morals and sanitary regulations, permit me to make the following statement for publication and general information. It has been reported that one of our butchers has been in the habit of purchasing diseased and disabled cattle that were injured in transportation and left at the stock yards in this place, and after dressing their carcasses offer the meat for sale to his customers at his market. [Thereby meaning that plaintiff was guilty of selling diseased and unwholesome meat to his customers.] This rumor, so repugnant to all sense of decency, was only given a passing thought, as it was not deemed possible that any one enjoying the confidence of our citizens, could or would commit such a flagrant offense against the law of the land, to say nothing of the outrage upon the better feelings of society and wanton disregard of the health of the community. The undersigned to satisfy himself as to the truth of said rumors, visited the stock yards on yesterday, and there saw a steer that had been crippled on Saturday, and hauled out to die, and to all appearances would have died by night, so badly was it injured. That steer was sold to Frank Kuhn, the aforesaid butcher [thereby meaning the plaintiff], and he [meaning the plaintiff] leaving it there until Sunday afternoon, butchered said steer, hauled it out to the slaughter pen, and there it was dressed and the meat brought from there to his [meaning plaintiff's] market, and offered for sale to his [meaning plaintiff's] customers.

"It may be said why not make complaint, have the offender arrested and punished according to law ? but knowing the law's delays, quibbles and technicalities so frequently allow the offender to go free while the prosecutor pays the costs, it is thought best to give this matter into the hands of the public, and let them govern themselves accordingly, the undersigned holding himself ready at all times to substantiate the truth of

the charge. This is not done in any spirit of animosity towards Mr. Kuhn, and is only prompted by a desire to have the public generally made conversant with the facts.

"But it is placing the legitimate tradesman at a disadvantage and is taking unfair advantage of patrons who think they are buying good wholesome food, when in fact they had better be purchasing poison ; and here comes up a question : May not a large amount of the fatal sickness in our community be traced to this cause, that is, eating the meats of diseased and unhealthy carcasses ? Now, having no particular desire to have Mr. K. [meaning plaintiff] prosecuted, it is but just that this matter be thoroughly ventilated, and let the authorities do what may be necessary to prevent a recurrence of the offense. It may lead to the appointment of a market inspector, or the establishment of market laws, rules and regulations which would make such offenses impossible, and if Mr. Kuhn [meaning plaintiff] thinks he is injured in the publication of this article, the parties [meaning all of the defendants who were then acting together] authorizing it, hold themselves responsible for any damage he may sustain [meaning the plaintiff] before the courts of the country, or in any other way."

　(Signed)　　　　　　　　　　　　　　　　　"Citizen."

That the said defendants, acting together, did, on or about the ninth day of August, A. D. 1886, wilfully and maliciously cause the said false, malicious and libelous article of and concerning the plaintiff to be published in a newspaper in the city of Texarkana, as the "Daily Texarkana Independent," which said newspaper containing the said article of and concerning the plaintiff, the said defendants acting together, did, on or about the said ninth day of August, 1886, circulate and cause to be circulated and read amongst divers persons and citizens in Bowie county, in the State of Texas; that by reason of the publishing and circulating of said libel by defendants of and concerning the plaintiff he, said Frank Kuhn, is greatly prejudiced, degraded and injured in his aforesaid good name, fame, credit and reputation, and is held up, exposed and brought into public infamy, disgrace, contempt and hatred; and that by reason of the premises he has suffered great anxiety and distress of mind, and been greatly injured and prejudiced in his trade, business and calling, and in many other respects, to his damage fifteen thousand dollars.

Further, that on the twenty-fifth of August, 1886, the said

defendants falsely and maliciously complained to S. D. Leary, a justice of the peace, that on the eighth day of August, 1886, the plaintiff, Frank Kuhn, did unlawfully and knowingly sell for food, to a person to affiants unknown, the flesh of an animal, to wit, a beef steer, which had been slaughtered when diseased, without making the facts relating to the death of said animal fully known to the buyers of the flesh thereof, and caused plaintiff to be arrested and brought before said justice to answer said charge; that said defendants, acting together in a common design, appeared and prosecuted the charge aforesaid against plaintiff; notwithstanding which plaintiff was, by said justice and jury trying said cause, discharged and dismissed; to plaintiff's damage fifteen thousand dollars, and plaintiff prayed judgment for said sums of money.

And that defendants continued their malice, and on September 6, 1886, acting together with intent to ruin plaintiff, did write and cause to be published in said newspaper, of and concerning plaintiff, the following:

"Although the trial of Mr. Kuhn resulted in his acquittal of the charges, we deem it but just to the public and ourselves to publish a part of the evidence adduced on the trial, which fully substantiates the statements published on 9 August. 1886, in reference to his [meaning plaintiff] slaughtering crippled cattle and diseased meats. We have no apology to make. No sympathy to ask nor excuses to render. Feeling conscious of the fact that it was a duty to ourselves as well as to the public to let the conduct of Mr. K. [meaning plaintiff] be spread out before the world and subjected to the criticism its infamy demands, we fear neither his competition in business nor threats of instituting a suit for damages. If he [meaning plaintiff] can injure our business by selling diseased meats, after the public knows the facts, he is welcome to the benefits; and as for a damage suit, we will say we have property and money to pay any judgment he may obtain in the courts, and we won't cry persecution nor beg for a compromise. [Signed by defendants.] To the further great damage," etc.

The defendants demurred and pleaded general denial, and specially pleaded that the alleged libelous words were true and that the publications were made from duty to the public, etc.

Trial was had and verdict for plaintiff, for two hundred and fifty dollars actual, and two hundred and fifty dollars exem-

plary damages. Judgment was rendered upon the verdict. Motion for new trial was overruled. Defendants appealed. The further facts of the case are given in the opinion.

*O. C. Porter, R. D. Harrell* and *Talbot & Turner,* for appellants.

1. A fair and bona fide publication of a judicial proceeding is privileged and no damages accrue thereby to the party aggrieved. (Townsend on S. and L., 3 ed., secs. 120, 208, 209, 229, 231; Belo v. Wren, 63 Texas, 720.)

2. The statute allows inconsistent pleadings to a defendant. This forbids the use of statements in one plea being used as admissions against another plea. (Fowler v. Davenport, 21 Texas, 633; Express Printing Co. v. Copeland, 64 Texas, 354.)

3. The verdict is against the testimony. (Long v. Steiger, 8 Texas, 462; Taylor v. Ashley, 15 Texas, 50; Willis v. Lewis, 28 Texas, 191; Garvin v. Stover, 17 Texas, 295; Chandler v. Meckling, 22 Texas, 42; Zapp v. Michaelis, 58 Texas, 275; G., H. & S. A. R'y Co.v. Bracken, 59 Texas, 71; H. & T. C. R'y Co. v. Schmidt, 61 Texas, 282.)

*F. M. Henry* and *Henry & Henry,* for appellee, cited Townsend on Libel and Slan., p. 660, and secs. 4, 110, 119, 147, 169, 177, 182, 281, 290, 318, 347, 403, 417; Field on Damages, secs. 69, 73, 79, 82, 687, 696; Cooly's Cons. Lim., pp. 423, 453; Cooly on Torts, 196; Belo v. Wren, 63 Texas, 686; Ross v. Fitch, 58 Texas, 149; Gordon v. Jones, 27 Texas, 622; McQueen v. Fulgam, 27 Texas, 464; Zeliff v. Jennings, 61 Texas, 458; Heldt v. Webster, 60 Texas, 207.

Stayton, Chief Justice. This action was brought by appellee to recover damages on account of two libelous publications alleged to have been made by appellants in the Daily Texarkana Independent.

One of these is alleged to have been made on August 9, 1886, and this consisted in an accusation against appellee in which he was charged with slaughtering and selling for food diseased and unwholesome meats.

The other was of date September 6, 1886, wherein it is alleged that appellants, after appellee had been arrested and tried and acquitted upon an accusation made by appellants against him, charging him with killing and selling for food a

beef steer which had been slaughtered when diseased, without making the condition of the animal known to his customers, iterates the charges before published.

With these was joined an action for malicious prosecution, based on the prosecution above referred to.

In connection with the publication of September 6 was published a statement of what purported to be the substance of the evidence given on the trial of the criminal charge above referred to. On the trial appellants proposed to prove by a witness that the part of the publication which purported to be substantially a true statement of the evidence adduced on the trial of the criminal charge against appellee, was in fact a fair and full statement.

The evidence was objected to and the objection sustained. We think there was no error in this.

The action was not based on so much of the publication as purported to be a report of the judicial proceeding, but upon the iteration of the charge after the appellee had been acquitted.

Under the pleadings the appellants were at liberty to prove the truth of the charges made against the appellee, but this could not be proved by showing that the published report of the proceedings was fair and full.

If the action had been based on the publication of what purported to be a fair and full report of the proceedings had on the trial of the criminal charge, it would have been proper to have admitted the evidence; and if it was shown to have been a fair and bona fide report, in the absence of proof of malice, the publication would be deemed privileged and as furnishing no ground for damages.

If the evidence excluded was not offered to prove the truth of the charge iterated in the second publication, it could only have been offered for the purpose of showing that from the evidence given on the trial of the criminal charge against appellee, there was ground to believe that the charge made was believed by appellants to be true at the time they caused the publication of date September 6, to be made.

If the charge made in the second publication had been based on the evidence given on the trial of the criminal cause, the character of that evidence would tend to rebut the existence of malice if it was such as tended to show that the appellee was guilty of the crime charged.

The appellants, however, were present at the trial and knew what the testimony was, and without objection were permitted to offer in evidence the entire matter contained in the publication of September 6, which included what purported to be a substantial statement of the evidence offered on the trial of the criminal charge against appellee.

Under this state of facts it was unimportant whether the report of the proceedings as published was fair and bona fide. That was not an issue in the case, and the evidence excluded did not tend to show the motive of the appellants in making the second publication.

With other defense appellants pleaded the truth of the matters contained in the publications made the basis of this action, and on the trial, over the objections of the appellants, the appellee was permitted to read in evidence so much of the answer as alleged the truth of the matters charged in the two publications. The appellee insists that this evidence was admissible as a republication, to show malice. The contrary is held in Printing Co. v. Copeland (64 Texas, 357), wherein it is said that a different holding would destroy a right given by statute to every defendant to plead inconsistent defenses. The rule is well settled in this State as announced in the case above referred to. (Rev. Stats., art. 1262; Fowler v. Davenport, 21 Texas, 626.)

On the trial the appellee was permitted to prove that the appellants were possessed of considerable property. This is assigned as error. The authorities as to the admission of such evidence are conflicting, and it may be true that the larger number of adjudicated cases hold such evidence admissible in actions of this character. Some of the cases that so hold place the ruling on the ground that the possession of wealth gives to its possessor an influence he would not otherwise have, and that for this reason a jury would be authorized to find that a libel published by a person so possessed would prove more injurious than if published by a person of equal moral and social worth and standing, but possessed of but little property.

As to this we feel as expressed by the Supreme Court of Connecticut, that "we could better reconcile it to our views of correct principle, if we could see that wealth alone, especially in this state of society, gives, of course, to its possessor, rank and influence. If it does, in some instances, this is not so com-

monly true, we think, as that a new and important legal principle should grow out of it." (Case v. Marks, 20 Conn., 250.)

Other cases hold that such evidence should be admitted in order to enable a jury to impose on the defendant a proper punishment by way of exemplary damages, and that the punishment is properly graded only when it bears proportionally to the wealth of the defendant.

In the administration of laws made to secure the proper punishment of crime no such rule is recognized, and it would be strange indeed if such a rule ought to be applied in an action resulting in damages in which a defendant, not as compensation for an injury inflicted, but as punishment, may be mulct in exemplary damages.

A rule which makes the true basis for damages not the injury inflicted but the ability of the offending person to pay, to our minds finds no sanction in principle, and if applied would lead to results most embarrassing in the administration of justice.

It would not be contended by those who place the admission of such evidence on the ground last mentioned, that it ought to be admitted to influence the increase of a verdict for actual damages which may in many cases depend upon the continuing injurious result of the wrongful act.

So far as exemplary damages, damages for purpose of punishment, are concerned, it is certainly true that no fact not existing at the time the wrongful act is completed, ought to be taken into the estimate in determining the quantum of punishment that ought to be imposed.

Whether the trial be immediately after the injury or after the lapse of years, damages awarded for purpose of punishment ought to be the same, and dependent of the character of the act intended to be punished, and not upon the changing ability of the wrong doer to pay. This is so in all cases in which punishment of wrong is the purpose, whether the wrong be classed as crime or not.

If such evidence be admitted to enable a jury to impose the proper punishment, it follows that the ability of the transgressor at the time of trial becomes the test of the measure of punishment.

If he is then wealthy, heavy damages alone will operate a sufficient punishment, but if he is then poor, slight damages will be sufficient punishment for the same act. The wealth or

poverty of the transgressor at the time the injurious act was committed, under such a rule as would justify the admission of the evidence objected to, would be of no importance if such evidence be admitted to enable a jury to fix the proper punishment.

As said by the Supreme Court of Alabama: "It would seem that if such proof is allowable, in order to aggravate the damages in such cases, where the defendant is wealthy, common justice would require that a converse rule should prevail in the case of poor defendants, and they should be allowed to give their poverty in evidence to mitigate the damages. Yet, nearly all the books declare that this is not the case, and common sense revolts at the idea of its adoption. For sad would be the fate of that country whose laws concede to the insolent bully, seducer or slanderer the privilege of perpetrating his wrongs with comparative impunity, under the assurance that, when sued for his practices, the damages would be graduated to his present ability to pay them, and consequently would be merely nominal. No sound principle of law tolerates such a practice. (Coxe's Rep., N. J., 77, 80; Morris v. Backer, 4 Harrington's Rep., Del., 520; Case v. Marks, Id.; Ware v. Carthage, 24 Ala., 626.)"

The question being an open one in this State, in view of the conflict of decisions, we feel authorized to adopt the rule which seems to us best supported by principle, uniform in its operation, of easy application and avoiding collateral inquiries. Such a rule, we are of opinion, requires the exclusion of such evidence as was offered in this case over the objections of appellants.

There was no error in admitting in evidence that part of the publication made on September 6, which was made the basis of the action, and that entire publication was read by the appellants themselves. The court did not err in charging that so much of the publication of September 6 as was made ground of action was libelous and actionable, per se, and the charge in the respects complained of was in the main a correct statement of the law applicable to the complex case made by the pleading.

It is urged that the court below erred in overruling the motion for a new trial on the ground that the evidence showed clearly that the statements made in the publications were true.

In view of the fact that this judgment will have to be re-

versed for errors noticed, it is not necessary or proper that we should express an opinion as to the correctness of the ruling of the court below on this question.

For the errors noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered November 2, 1888.