BUKOWSKI v. WILLIAMS. (No. 185.)

(Court of Civil Appeals of Texas. Beaumont. Oct. 22, 1917.)

1. MALICIOUS PROSECUTION &#9901;&ndash;62&mdash;WEALTH OF DEFENDANT&mdash;EVIDENCE&mdash;ADMISSIBILITY.

    In action for malicious prosecution, admission over objection of evidence showing financial

condition and worth of defendant was reversible error.

**2. COURTS ⬦⚏92 — DECISIONS OF SUPREME COURT—DICTUM.**

The Court of Civil Appeals would not feel bound by dictum of the Supreme Court.

**3. COURTS ⬦⚏91(1)—DECISIONS OF SUPREME COURTS—BINDING EFFECT ON OTHER COURTS.**

A decision of the Supreme Court stands as the law of the state in so far as the Court of Civil Appeals is concerned until it shall be overruled by that court.

**4. MALICIOUS PROSECUTION ⬦⚏22—DEFENSE—ADVICE OF MAGISTRATE.**

The advice of a justice of the peace or a constable would not afford any defense in an action for malicious prosecution.

**5. MALICIOUS PROSECUTION ⬦⚏60(4) — WANT OF PROBABLE CAUSE—ADVICE OF ATTORNEY.**

In malicious prosecution, evidence that prosecutor consulted and was advised by counsel is admissible upon issue whether he acted without malice and perhaps had probable cause.

**6. MALICIOUS PROSECUTION ⬦⚏22—PROBABLE CAUSE—ADVICE OF PROSECUTING OFFICER.**

Where a county or district attorney advises a citizen upon a full and fair statement of facts that a criminal prosecution can be sustained, the institution of the prosecution by the citizen cannot afford the basis of a suit for malicious prosecution against him.

**7. MALICIOUS PROSECUTION ⬦⚏56 — BURDEN OF PROOF.**

The burden of establishing want of probable cause, presence of malice, and that plaintiff was not guilty of theft of the mule is upon plaintiff.

**8. MALICIOUS PROSECUTION ⬦⚏56—WANT OF PROBABLE CAUSE — PRESUMPTION OF MALICE.**

Malice may be presumed where a want of probable cause is shown.

**9. MALICIOUS PROSECUTION ⬦⚏64(2). — WANT OF PROBABLE CAUSE—EVIDENCE.**

Evidence *held* to warrant charge that, if there was no contract by which the mule was turned over by plaintiff to defendant, there was a want of probable cause on the part of defendant when he filed the complaint charging theft of the mule.

**10. MALICIOUS PROSECUTION ⬦⚏64(2)—PROBABLE CAUSE—EVIDENCE.**

Evidence *held* not to warrant charge that, if the contract by which defendant claimed to have acquired the mule was made, it would constitute probable cause for the prosecution for the theft of the mule.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Suit by E. W. Williams against John Bukowski. Judgment for plaintiff, and defendant appeals. Reversed, and remanded for new trial.

E. B. Pickett, Jr., of Liberty, and Dean, Humphrey & Powell, of Huntsville, for appellant. Marshall & Harrison and W. T. Norman, all of Liberty, for appellee.

HIGHTOWER, C. J. We take from appellant's brief the following statement, showing the nature and result of this suit, which is shown by the record to be substantially correct:

This suit was filed by the appellee, E. W. Williams, against the appellant, John Bukowski, for the recovery of damages alleged to have been sustained in consequence of an alleged malicious prosecution, appellee's petition alleging that on December 11, 1915, he was arrested upon a complaint made by the appellant before W. S. Perriman, justice of the peace, precinct No. 1, Liberty county, Tex., charging appellee with the theft of a mule, and that when appellant caused such arrest of appellee, appellant well knew that appellee was not guilty of the theft of said mule, but that appellant acted without probable cause to believe that appellee had stolen said mule, and willfully, maliciously, and falsely made said affidavit for the arrest and detention of plaintiff. Appellee further alleged that the criminal charge against him was false, slanderous, oppressive, and defamatory, and was willfully, wantonly, and maliciously initiated for the purpose of annoyance, and for the further purpose of frightening and coercing appellee into the surrender of said personal property to appellant, and not for the purpose of vindicating public justice. The property referred to in this allegation was specifically mentioned in appellee's petition. It was further alleged by appellee that appellant forced and compelled and coerced him to surrender, deliver, and transfer to appellant, said personal property, which was alleged to be of the value of $400. Appellee prayed for actual damages in the sum of $25,000, and for exemplary damages in the sum of $25,000.

The case was tried with a jury, and was submitted upon a general charge by the court, and the jury returned a verdict in favor of appellee for $2,500 as actual damages and $1,000 as exemplary damages, and judgment was entered in his favor accordingly.

Appellant, in due time, filed his motion for new trial, which was by the court overruled, and the court's action in so ruling was properly excepted to, and the cause is now before us on appeal for review.

Appellant and appellee, on the 12th day of February, 1915, entered into a written contract of lease, by the terms of which appellant let and leased to appellee, for the period of one year, a farm in Liberty county, Tex., for a cash rental of $3.50 per acre, and by the terms of this contract this rent became due and payable on the 1st of December following. Appellant was not a resident of Liberty county, but resided at New Waverly, in Walker county, Tex., and on the 9th of December of that year, acting upon the suggestion made to him by letter from one of the officers of the Liberty County State Bank, left New Waverly on the evening of that day, and reached the town of Liberty the following morning for the purpose of collecting the rent due by appellee under said contract. After reaching Liberty, appellant went out to his farm, four miles distant from the town of Liberty, where he found appellee, and made known to appellee that his purpose in

---

⬦⚏For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

being there was to collect the rent due from appellee, and he was informed by appellee that appellee was unable to pay him the rent in cash, for the reason, as stated by appellee at the time, that the storm of that year had wrought such destruction of his crop that he did not have the money with which to pay the rent in cash. After some discussion of the matter between appellant and appellee at that time, appellant told appellee that he appreciated the situation, and that in view of the misfortune of appellee, on account of the storm, he (appellant) would agree to accept $150 cash as settlement in full of the rent due from appellee. There were some suggestions made by appellee at the time in the way of a proposal to turn over to appellant certain personal property owned by appellee, and consisting of two mules, a wagon, and some corn that had been grown on the farm that year, but it seems that the parties reached no understanding at that time, and on the next day they went into the town of Liberty, appellee thinking that he might be able to make some arrangement by which he could raise the money and settle with appellant for the rent, but after an effort in that direction, appellee was unable to borrow money in the town of Liberty with which to pay appellant, who up to that time was insisting upon the rent being paid in cash. Up to this point there was practically no dispute in the evidence.

It was the contention of appellee below, as shown by the evidence in the record before us, that after ascertaining that he could not raise the money in the town of Liberty with which to pay appellant, and after his offer to turn over to appellant enough of the personal property then owned by him, including the mule in question, had been refused and rejected by appellant, and after seeing, according to appellee, that he would be compelled to raise the actual cash with which to pay appellant, he (appellee), late in the evening of December 11, 1915, left the town of Liberty, with the intention of going to the town of Sour Lake, in Hardin county, Tex., for the purpose of meeting his son, who was then at Sour Lake, and borrowing from his son such money as he needed to pay appellant. Appellee, when he left the town of Liberty that afternoon, rode the mule, which it was charged in the complaint filed in the criminal case belonged to appellant, and that same night, before appellee reached Sour Lake, he was overtaken by the constable of precinct No. 1 of Liberty county, who was driving an automobile, and who was accompanied by appellant, and was arrested by the constable, who was armed with a warrant for that purpose, based upon the complaint filed by appellant, as hereinbefore stated. Appellee was carried back by the constable to the town of Liberty, and there made bond to appear before the justice of the peace on the following Monday for examining trial.

It was the claim of appellant on the trial below that, after appellee had ascertained in the town of Liberty on the morning of the 11th of December, 1915, that he could not procure the money with which to pay appellant, he and appellee then reached an agreement and understanding by which appellee agreed to turn over to appellant the mule, the ownership of which was claimed by appellant in the criminal complaint, along with other personal property, in satisfaction and payment of appellant's debt against appellee, and that appellee did, in fact, turn over to appellant said mule, and pointed him out to appellant while he was hitched to the rack in the town of Liberty on that day, and that such agreement and understanding was a full and complete contract, by which appellant agreed with appellee to accept said personal property, including said mule, as a full and final discharge of appellant's debt against appellee, and from these respective contentions, as stated, it will be seen that appellant's claim of ownership to this mule is based alone and wholly upon the claimed agreement or contract between him and appellee, as above stated, by which appellee turned over said mule and other property in settlement and discharge of his indebtedness to appellant.

We think this will suffice to show clearly the character of the controversy between the parties. There are 15 assignments of error in appellant's brief, but we shall not discuss them in the order in which we find them, and shall only refer specifically to such of them as we think should be mentioned, in view of the probability of another trial of this case.

We proceed first to the disposition of appellant's fifth assignment of error, which complains of the action of the trial court in admitting in evidence, over appellant's objection, testimony showing the financial condition and worth of appellant, Such testimony was admitted by the trial court, over objections timely made by appellant, on the ground that such evidence was irrelevant and immaterial, and was calculated to inflame the minds of the jury, and to prejudice them against appellant, etc. There are several assignments in the record which, in effect, complain of the action of the trial court in admitting this character of evidence, but they will be disposed of, in effect by what we shall say under this assignment.

This testimony, according to the record, without stating it in detail, consisted substantially in showing the property owned and rendered for taxation by appellant in Walker county, Tex., including a stock of merchandise, a homestead, and some small items of personal property, and aggregating approximately between $4,000 and $5,000, and also in showing the value of realty owned by ap-

pellant in Liberty county of the probable value of between $9,000 and $10,000. This testimony was offered by appellee, as stated by him at the time, for the purpose of enlightening and guiding the jury in assessing exemplary damages, in the event the jury should find in favor of appellee for exemplary damages, and to aid the jury in measuring or graduating the exemplary damages so found, if any. Appellant strenuously objected to the admission of such testimony for any purpose and on the grounds hereinbefore stated, but, as stated, the objection was overruled, and thereafter the trial court instructed the jury, in effect, that such evidence showing the financial worth, etc., of appellant, might be considered by the jury on the issue of exemplary damages if, in their discretion, they should award such damages, but told the jury that such evidence could not be considered by them for any other purpose in the case. This charge also was duly excepted to by appellant, and is assigned as error herein.

[1] The action of the court in admitting this character of evidence over the objection of appellant was error, which necessitates a reversal of the judgment in this cause.

We find, after a thorough investigation of this question, that it was held by the Supreme Court of this state, in the case of Young et al. v. Frank Kuhn, 71 Tex. 645, 9 S. W. 860, speaking through Chief Justice Stayton, that it was reversible error 'on the part of the trial court to admit such evidence in a case of this character. The reason assigned by the court in that case for so holding is fully stated in the opinion written by Chief Justice Stayton, and it would serve no useful purpose to repeat that reason here. Suffice it to say that this court is bound by the holding of the Supreme Court in that case on this question, as announcing the rule in this state, and any discussion of the point by us would serve no useful purpose or be profitable in any way, either to the profession or bench in this state. The opinion of the Supreme Court in that case was delivered in 1888, and Judge Stayton expressly announced in that opinion that up to that time the question now under consideration was an open one in this state, and while it was expressly stated in that opinion that the weight of authority on the point, in so far as numbers were concerned, seemed to be in favor of the admission of such evidence in a case of this character, yet the opinion states that sounder reason is against the admission of such evidence. We note that Judge Stayton in the case mentioned did not refer to the dictum of Judge Bonner in the case of Willis v. McNeill, 57 Tex. 465, which dictum was also against the admission of this character of evidence in a case of this character.

[2] This court would not feel bound by what was said in Willis v. McNeill on this point, for the reason that the expression of the court on the point in that case was clearly not called for, or necessary, in disposing of the case. The question simply arose there on objection to the argument of counsel for the plaintiff, which argument was without evidence in the record touching the wealth, etc., of the defendant in that case, but it was said there that such evidence could not be admissible under any circumstances.

[3] We have been unable to find where Young v. Kuhn, supra, has ever been overruled in this state, or in any manner questioned; neither have we been able to find where the same has been since followed or even cited, but the decision, having been rendered by the Supreme Court of this state, stands as the law of this state, in so far as this court is concerned, until it shall be overruled by that court. The writer, speaking for himself only, is of the opinion that the overwhelming weight of authority in America, both as to numbers and in sound reason, sustains the admission of the character of evidence here under discussion, the writer entertaining, at the same time, the very highest regard for the great jurist who wrote the opinion in Young v. Kuhn, above referred to. It would serve no useful purpose to discuss the writer's reasons in this connection, and he simply desires to here note his personal opinion in this connection, for the reason that, if in the future the Supreme Court of this state shall conclude that this character of testimony is admissible in cases of this kind, the writer will be found in accord with that view.

We therefore sustain appellant's fifth assignment of error, and all other assignments on that point found in the brief.

We have carefully examined appellant's first, second, and third assignments of error, which are grouped, and the several propositions submitted thereunder, and have concluded that none of them should be sustained, and they are overruled.

With reference to the first proposition under these assignments, we say briefly that the record in this case, when clearly understood, shows conclusively that the criminal prosecution was not compromised or disposed of by compromise between appellant and appellee, or in any other manner than by the act of the county attorney of Liberty county, acting in his official capacity, and such prosecution was dismissed by him for the expressed reason that, in his opinion, as the public prosecutor of that county, the evidence was insufficient to warrant a further prosecution of the case. This, we say, is manifest when this record is carefully understood. Appellant himself expressly denies any such compromise, and it is clearly shown that appellee, at the time he executed the conveyance of personal property to appellant, on the day of the dismissal of the criminal prosecution, did not even know that the criminal

prosecution had been dismissed by the county attorney, and it is the county attorney's positive testimony that he did not consult appellee nor appellant, nor any one else, nor was he actuated in dismissing the same by the desires of either party.

[4-6] With reference to the second proposition under these assignments, we desire to say that we have been cited to no authority by appellant, nor have we been able to find any in Texas, sustaining the contention that the advice of a justice of the peace or a constable in Texas would afford any defense whatever to one sued in a civil action for damages growing out of a malicious prosecution. We think that there is nothing in the proposition. We are aware that in cases of this character the defendant is permitted to show that before instituting the criminal prosecution he consulted and was advised by an attorney at law, such evidence being admissible as bearing upon the issue of good faith, in instituting the prosecution, and therefore negativing the essential element of malice, but even then such evidence would only be admissible upon the issue of fact as to whether the prosecutor acted without malice, and perhaps had probable cause at the time of the institution of the criminal prosecution. What we have said in this connection has reference to a private practitioner of the law, and not to a public prosecutor, such as a county or district attorney in this state. We understand the rule to be in this state that, where a county or district attorney advises a citizen upon a full and fair statement of the facts by such citizen that a criminal prosecution can be sustained, then the action of the citizen in instituting the criminal prosecution, under such circumstances, cannot afford the basis of a suit for malicious prosecution. This is simply upon the theory of estoppel; that is, upon the theory that the public prosecutor in such instance stands in the stead of the state itself, and, having advised the citizen that a certain state of facts, when fairly and fully made by the citizen to the state, warrants a criminal prosecution, the state and all citizens of the state would be estopped to prosecute a civil action for damages based upon such criminal prosecution. There is no use in citing authority for our conclusion in these respects, because there can be no real question of the correctness of our views as here expressed.

In view of the probability of another trial of this case, it would not be proper, perhaps, for this court to discuss the third proposition under these assignments, which challenges the sufficiency of the evidence to warrant the jury in finding that appellant did not have probable cause, etc., for instituting the criminal prosecution. We simply dispose of the same by saying that we cannot sustain the proposition.

The fourth assignment of error relates to a matter that will not occur on another trial, and needs no discussion.

The sixth and seventh assignments have been disposed of by what we have said relative to the fifth assignment.

[7, 8] We may dispose of the eighth and ninth assignments by saying that it would be safer, perhaps, for the trial court, if the case should be tried again, to let the charge in this connection clearly show that before the jury could find in favor of plaintiff want of probable cause and presence of malice must be shown by the evidence, and also that it must be shown by the plaintiff that he was not guilty of theft of the mule, as charged. The burden of proof to establish all three of these essential elements is upon the plaintiff in this case. It will be borne in mind, however, that the element of malice may be presumed where a want of probable cause is shown. The jury will be clearly guided in these matters by the charge of the court on the next trial.

We have examined the charge of the trial court in connection with the second proposition under the eighth and ninth assignments of error, and we find that there is no room for the contention made by this proposition.

The third proposition under these assignments points out nothing in connection with which we deem it necessary to say anything as a guide to the trial court hereafter.

The tenth assignment of error, in so far as it challenges the correctness of the definition of "probable cause" as contained in the court's charge is overruled. The definition was, in our opinion, clearly sufficient, and has been approved by the appellate courts of this state.

With reference to the eleventh assignment, we will suggest that the trial court, on another trial, let the portion of the charge there complained of clearly show that both want of probable cause and malice must have existed at the time defendant filed the criminal complaint, and, further, that the plaintiff must establish, by a preponderance of the evidence, that he was not guilty of the offense of theft, as therein charged.

[9, 10] With reference to the twelfth assignment of error, we have only this to say: Assuming that the state of the evidence upon another trial will be the same as shown by this record, the court would be clearly warranted in telling the jury that, if they believed that there was no contract or agreement by which the mule in question was turned over by appellee to appellant, as claimed by appellant, that then there was a want of probable cause on the part of defendant at the time he filed the criminal complaint, because there is no pretense that appellant had any claim of ownership to this mule other than the contract or agreement which he claims was made with appellee in settlement of his debt. We do not think, however, that the converse would be true; that is,

we do not think that the court could correctly tell the jury that, if they should find that such contract as claimed by appellant, by which he acquired the mule, was in fact made, that that of itself would in law constitute probable cause for instituting the criminal proceeding, because we are of opinion that, even though the jury might believe that the contract as claimed by appellant was made, by which he was to have the mule in question, yet it would not necessarily follow, as a matter of law, that he had probable cause for believing that plaintiff intended to steal the mule, but under the facts in this case as now before us we think the jury should pass upon this as a question of fact. Of course, we do not intend by what we have said to use the very words that the court should employ in a charge on this point.

We overrule the thirteenth assignment of error, for reasons stated in disposing of the first, second, and third assignments. There would be no basis in the evidence for such a charge as was requested by appellant, the refusal of which is made the basis of this assignment.

With reference to the fourteenth assignment, we will say only that, while we believe the court's charge on the point here complained of was full enough, yet it would, perhaps, be well to hereafter frame it so as to leave it free of any question as made in this assignment.

With reference to the fifteenth assignment, we will only say that the same presents no error for which this court would reverse the judgment, but upon another trial, if the issue raised by the pleadings mentioned in this assignment should not be submitted to the jury, for any reason, it would be proper practice to affirmatively take the same from the jury by the court's charge.

This disposes of all assignments found in appellant's brief, and it follows from what we have said that the case must be reversed on account of the action of the court in admitting, over the objection of appellant, the evidence complained of under the fifth assignment.

The judgment of the trial court is therefore reversed, and the cause remanded for a new trial.