# FRANK A. MULLEN v. JOHN H. DEVENNEY.[1]

June 17, 1921.

No. 22,152.

**Alienation of affection — evidence need not be pleaded.**

1. The arts used and acts done by defendant in alienating the affections of plaintiff's wife, are matters of evidence which need not be pleaded.

**Charge to jury.**

2. If pleaded and some are not proved, the court is not required to instruct the jury that there is no evidence that defendant was guilty of those not proved, even though plaintiff's counsel read the complaint to the jury in making his opening statement. Bowers v. Chicago, M. & St. P. Ry. Co. 141 Minn. 385, distinguished.

**Same.**

3. The charge to the jury definitely limited them to the consideration of defendant's conduct as shown by the evidence, and correctly stated the ultimate facts which plaintiff must establish to make out a case.

**Refusal to give requested instruction.**

4. There was no error in the court's refusal to give the instruction requested by defendant.

**Objection to improper argument should be prompt.**

5. If counsel for one of the parties makes an improper statement in his closing argument to the jury, prompt objection should be made, in order that there may be an opportunity to correct its prejudicial effect by appropriate action at the time.

**New trial because of such misconduct.**

6. The granting of a new trial for such misconduct rests largely within the discretion of the trial court, and its action will not be reversed except for an abuse thereof. It was not abused in the denial of a new trial for the alleged misconduct of plaintiff's counsel in the particulars set out in the opinion.

[1]Reported in 183 N. W. 350.

After the former appeal reported in 136 Minn. 343, 162 N. W. 448, the case was tried before Converse, judge of the First judicial district, who when plaintiff rested denied defendant's motion to dismiss the action and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $23,500. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Davis & Michel, T. J. Mangan* and *Royal A. Stone,* for appellant.

*John Kain, A. G. Divet* and *W. E. Purcell,* for respondent.

LEES, C.

This is an action for damages for the alienation by defendant of the affections of plaintiff's wife. It made its first appearance here in 1917 on an appeal from an order striking out a portion of the answer. Mullen v. Devenney, 136 Minn. 343, 162 N. W. 448. Plaintiff's wife had theretofore obtained a divorce from him and that case has also been here. Mullen v. Mullen, 135 Minn. 179, 160 N. W. 494. There were three trials of the present action in the court below. The first resulted in a verdict for plaintiff for $40,000, which was set aside as excessive. At the second, the jury disagreed, and at the third and last, plaintiff secured a verdict for $23,500. Defendant appeals from a denial of a new trial.

The record is bulky and the briefs extended, but the questions presented for decision are few and comparatively simple. They center around alleged error in two respects: The refusal to give defendant's requested instructions, and misconduct of plaintiff's counsel not properly corrected by the court.

1. In addition to allegations of the ultimate facts which must be proved to maintain an action for the alienation of a wife's affections, the complaint set forth in detail the several acts done and the arts used to accomplish the alienation. These were properly matters of evidence by which plaintiff proposed to prove the ultimate facts and they might have been omitted from the pleadings. Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; French v. Deane, 19 Colo. 504, 36 Pac. 609, 24 L.R.A. 387; note to Burch v. Goodson, Ann. Cas. 1912C, p. 1181; 21 Cyc. 1623; 13 R. C. L. § 512, p. 1463.

In making his opening statement, plaintiff's counsel read the pleadings to the jury. Defendant requested special instructions covering each act charged in the complaint to the effect that the evidence failed to show that defendant had been guilty of any such acts. The requests were denied and defendant urges, upon the authority of Bowers v. Chicago, M. & St. P. Ry. Co. 141 Minn. 385, 170 N. W. 226, that this was prejudicial error. The court's instructionss were that

"The plaintiff's charge against the defendant, so far as I shall submit it to you, is as follows: That * * * the defendant * * * did wickedly and maliciously plan and contrive to, and enter upon the undertaking of obtaining for himself the love and affection of the said Anna Mullen, thus alienating and destroying her affections for the plaintiff, and teaching her to dislike and become dissatisfied with him and with her surroundings in said home, and to induce her to yield herself to his sexual embrace, and to thus break up and destroy the home of the plaintiff, and deprive him of the comfort of his said home and the love, affection and society of his said wife. That is the charge which the plaintiff makes as to the intention of the defendant for the acts which he subsequently charges the defendant did, as much as what the defendant actually did.

"The plaintiff further charges that in furtherance of such purpose and undertaking, the defendant did * * * approach and attend upon the said Anna Mullen with all the ordinary attentions, acts, wiles, and blandishments of a lover, and to ply her with compliments and flattery, and that he has thereby secured for himself the love and affection of said Anna Mullen, and has deprived the plaintiff of such love and affection. * * *

"This charge is all denied by the defendant, and in addition to denying the charge, the defendant alleges that if the plaintiff has lost the love and affection of his former wife, Anna Mullen, it is because of his drunkenness, and of his cruel and inhuman treatment of her and not because of anything this defendant may have done. * * *

"Now, those claims of the plaintiff on the one hand and of the defendant on the other hand, constitute the disputed questions of fact, gentlemen, which it is your province to determine."

There was a further instruction that before plaintiff could recover he

must establish three facts: First: The possession in the first instance of his wife's affections. Second: The loss or partial loss of them. Third: That such loss was caused by defendant's conduct "in one or more of the following particulars, as charged by plaintiff, that is, by his wrongful conduct in approaching and attending upon the said Anna Mullen with the ordinary attentions, acts, wiles, and blandishments of a lover, or by plying her with compliments and flattery, or by both of said methods," and that if plaintiff had failed to establish any one of these three facts, the verdict must be against him.

In the Bowers case three separate claims of negligence were pleaded, to which the court referred in charging the jury. There was no evidence to sustain two of them. Mr. Justice Holt said: "Stating all the claims without regard to the proof, and stating one issue involving acts not directly charged as negligence in the complaint, tended to confuse and becloud the single issue made by the evidence. * * * In view of the fact that the court had stated to the jury all the claims of negligence made in the complaint, we think defendant was entitled to the specific instructions requested withdrawing from consideration those as to which there was no proof whatever."

In the case at bar, but one ground for recovery is pleaded, namely, the alienation of the wife's affection. All other allegations of the complaint are of evidential as distinguished from the ultimate facts which are the foundation of plaintiff's right of action. In the Bowers case, negligence in one or more of the respects alleged was the ultimate fact to be established. The court did not limit the jury to a consideration of the one ultimate fact alleged which there was evidence to establish. But here the jury was definitely limited to consideration of conduct of defendant of which there was evidence. In this connection Korby v. Chesser, 98 Minn. 509, 108 N. W. 520, is in point.

Jurors are presumed to know the difference between accusations and proof. We doubt that a lasting impression is made on their minds by hearing pleadings read. They are more interested in what they hear from the witnesses and the court. At the close of a prolonged trial like this, filled with incidents of lively interest to the spectators, their recollection of what was read to them at the outset was apt to be dim. To have taken up each unfounded charge in the complaint and to have

stated that it was not supported by the evidence would have revived their recollection of such charges and diverted their attention from the live issues in the case. More harm than good will ordinarily be done by following this course. The practice of reading the pleadings in making the opening statement to the jury is not uncommon, but is not to be commended. Pleadings frequently abound in over-statements of fact and are usually couched in language unfamiliar to the average juror. The better practice is to state the issues in simple terms, and the evidence which the parties propose to offer in support of their respective contentions. See Korby v. Chesser, supra; Savino v. Griffin Wheel Co. 118 Minn. 290, 136 N. W. 876.

2. The court was requested but refused to instruct the jury that sexual relations between defendant and plaintiff's wife must be proved by the same amount and nature of evidence as a charge of adultery in a divorce action, and that there was no direct evidence of such relations. There was no error in this. The instruction, if given, would leave the jury in the dark as to the degree of proof required to establish a charge of adultery. The jury knew, without being told, that there was no direct proof of adultery, and presumably they also knew that there rarely is such proof.

3. Questions were put to one of defendant's witnesses to lay a foundation for his impeachment by the testimony of plaintiff. Plaintiff was not called to contradict the answers given. Defendant asked for an instruction that the jury had the right to infer bad faith from the asking of the questions without subsequently calling plaintiff to contradict the witness. The good faith of plaintiff or his counsel was not an issue for the jury. True, it is improper to put questions to an adverse witness ostensibly to lay a foundation for impeachment, but with no intention of following it up. If it appears that this has been done, the court may properly instruct the jury that they have no right to infer that the facts are as stated in the questions or that the witness' answers were untrue. No such instruction was requested. We find no error in the refusal to give the instruction which was requested.

4. To raise the point that counsel for the prevailing party was guilty of prejudicial misconduct in his argument to the jury, objection should be made and the court's attention called to the statement so there

may be an opportunity to correct its prejudicial effect by appropriate action at the time. State v. Frelinghuysen, 43 Minn. 265, 45 N. W. 432; Langdon v. Minneapolis Street Ry. Co. 120 Minn. 6, 138 N. W. 790; Wadman v. Trout Lake Lbr. Co. 130 Minn. 80, 153 N. W. 269. The trial court is best able to determine the effect upon the jury of the remarks of counsel. The granting of a new trial on this ground is very largely a matter within its discretion and its action will not be reversed except for an abuse thereof. Smith v. Great Northern Ry. Co. 133 Minn. 192, 158 N. W. 46; Wrabek v. Suchomel, 145 Minn. 468, 177 N. W. 764.

We dispose of the remaining assignments of error with these rules in mind.

In his argument to the jury, one of defendant's counsel said: "We want to stay within the record. Why does Mr. Murphy say 'there isn't a court in the land but what would grant you a divorce?'" In the closing argument, opposing counsel replied: "But she didn't have any ground for divorce. There wasn't any showing of it. If there was any complaint at all, it was the complaint that her husband stayed home too much."

Defendant requested an instruction that there was no evidence that the divorce was secured by means of false or perjured testimony. The instruction was not given, but the court did tell the jury they were in no way concerned with the rightfulness or wrongfulness of the decree of divorce. It is contended that, in view of the statements made in the argument, the requested instruction should have been given and that the ground was not properly covered by what the jury were told. We do not sustain the contention.

The remark of defendant's counsel first introduced the subject, which was wholly collateral to the issue on trial. The court correctly charged the jury they had nothing to do with the divorce proceedings. Moreover, if the remark was improper, it does not appear that any objection was made to it.

One of defendant's witnesses was asked, on cross-examination, whether plaintiff's counsel had not said to her that she knew more than she had told when a witness at the previous trial and that she need not be afraid to tell all she knew. The question was objected to as suggestive.

Addressing defendant's counsel, plaintiff's counsel said: "You are attempting to leave the impression with the jury that we were attempting to get this girl to testify to something that is untrue. We desire to say that the protection that was sought for her was that some of the emissaries of this defendant went to this little girl and threatened her in regard to her giving evidence in this lawsuit, and when she disclosed that to me I did say to her not to·be afraid to tell the truth." Objection was made and the court instructed the jury to ignore the remark. Defendant's counsel then asked the witness who had threatened her, and she gave the name of one of defendant's witnesses. We think defendant has no cause to complain of this incident.

When plaintiff's wife was on the witness stand she was asked about a trip she had made to the Pacific coast accompanied by a young woman. She was asked where her companion obtained the money for the trip, and answered that it was furnished by a friend of the young woman's mother. Asked who the friend was, she gave the name of one of plaintiff's counsel. The gentleman whose name was given turned to defendant's counsel and said:. "Tom, shake hands! I have got to hand it to you. This is one of the best things I have ever seen put over in a court of justice." This led to a retort, and finally plaintiff's counsel said: "This statement of counsel is an absolute falsehood and a lie." At this point the record abounds in objections, exceptions and requests for action by the court. The court said: "This must stop. Now, gentlemen, this has gone far enough. * * * We will drop it and go on." Then, referring to what had been said by plaintiff's counsel: "It was an improper statement to be made, and is excused only by the unusual circumstances preceding, and I think improper statements were made on both sides by each counsel. I will instruct the jury * * * to forget entirely, so far as this case is concerned, the little incident which has occurred here this afternoon." We are of the opinion that the incident was properly dealt with and that there is no occasion for complaint of the treatment either side received at the court's hands. A little later, plaintiff's wife reiterated the statement that had aroused the ire of plaintiff's counsel, who, addressing the court, said: "I object to this hysterical talk because it is all untrue." In his argument to the jury, referring to this incident, he said: "If

149 M.—17.

there is anything in this lawsuit that shows this is a trumped-up defense, it is just that there." It is urged that this was prejudicial misconduct. The trial court was not of that opinion and we are not inclined to disturb its conclusion.

The remaining charges of misconduct, as well as some of those already discussed, must be considered in the light of the following addition to the proposed case, made at the direction of the trial judge. In substance it is this: That in the argument to the jury defendant's counsel violently denounced plaintiff and his witnesses as perjurers, referred to his counsel contemptuously, and naturally provoked retaliatory remarks; that many of the excerpts from the argument of plaintiff's counsel refer and were in answer to improper argument of defendant's counsel; that the interruptions of defendant's counsel apparently were intended to prevent an orderly argument; that the court put a stop to them and informed defendant's counsel that they might have the entire argument taken by the court reporter and take exceptions to improper statements after the argument closed; that counsel did not have the entire argument taken, but sat by the reporter and directed him to take parts and not to take other parts of it, and that only a partial record was made, which is so disconnected as not to present the argument fairly; that no part of the argument, taken in its setting and context, seemed to the court to go beyond what was permissible, measured by the record and the argument of defendant's counsel it was intended to answer.

In view of this statement, defendant has no solid ground upon which to found his remaining charges of prejudicial misconduct. Nevertheless we have considered each of them. It would serve no useful purpose to set out or express approval or disapproval of the fragmentary remarks of counsel appearing in the record. We do not know the connection in which the remarks were made. They may have been pertinent as a reply to something said by defendant's counsel. The trial court's statement indicates that they were. We cannot assume that there was neither occasion nor justification for them. We cannot view the whole situation from the vantage ground of the trial court. We, therefore, decline to override its conclusions.

Finding no error in the record of which defendant may justly complain, the order denying a new trial is affirmed.