PAULINE MARIE CUMMISKEY v.
HERBERT JOHN CUMMISKEY.

107 N. W. (2d) 864.

February 17, 1961—Nos. 37,970, 37,971, 37,987, 38,018.

*C. A. (Gus) Johnson* and *Johnson & Johnson,* for Pauline Cummiskey.

*K. M. Krost,* for Herbert J. Cummiskey.

MURPHY, JUSTICE.

We have before us two appeals growing out of divorce and custody proceedings extending over many years. The husband, Herbert Cummiskey, in the court below sought by an action for a declaratory judgment to vacate and set aside a decree of divorce secured by his wife in the State of Arkansas. He appeals from an order of the lower court denying his motion to amend the findings or in the alternative for a new trial on the question of whether the Arkansas divorce is valid. His wife, Pauline, is appealing from a denial by the lower court of her motion for amended findings or a new trial on the issue of the validity of an ex parte order secured by her husband in Minnesota granting custody of the minor children to him.

The parties were married in Florida in 1944. They have three minor children—two boys who are 14 and 16 and a girl who is 12. In August 1950, after they had separated, the wife instituted an action for divorce. At that time they were residents of Minnesota. The divorce was granted, but later the decree was set aside and a new trial was ordered. On retrial in 1953 the court found that the wife was not entitled to a divorce, and judgment of dismissal was entered. Later she instituted an action for separate maintenance. She dismissed this action in August 1953 and about September 1 of that year left Minnesota for Little Rock, Arkansas, taking the children with her. She later testified that she moved to Arkansas to obtain "peace of mind" and possibly to get a divorce, but denied that she did not then intend to make Arkansas her permanent home. After arriving in Arkansas she consulted an attorney. She started one action for divorce which she dismissed. In April 1954, however, after having been domiciled in that state for the statutory period, she instituted a second action alleging that she and her husband had been living separately and apart without cohabitation for the immediately past 3 consecutive years, which is grounds for divorce in Arkansas. Her husband was notified by mail later in April 1954, after which he went to Arkansas and employed attorneys in Little Rock to appear specially to contest the jurisdiction of the Arkansas court. A motion for dismissal was filed alleging that his wife was not a bona fide resident of Arkansas but resided in and was domiciled in the State of Minnesota. On June 10, 1954, the Arkansas court found that the husband had appeared specially by counsel only for the purpose of contesting jurisdiction. The court found that it had jurisdiction, granted the divorce, and gave custody of the children to the wife.

The wife returned to Minnesota in July 1954 and about two and a half years later she married one Mike Madsen, with whom she had been keeping company since she and her husband had separated. The children have been with the wife substantially all of the time during these proceedings.

The court below found that the judgment decreeing divorce in the Arkansas action was entitled to full faith and credit in this state. In a memorandum the trial court indicated that he believed there was

substantial evidence which was inconsistent with an intent on the part of the wife to establish a bona fide residence in Arkansas, but since jurisdiction was litigated in the Arkansas court that issue was res judicata.

■ The principal contention of the husband is that the trial court erred in holding that the decree of divorce granted by the Arkansas court was entitled to full faith and credit in this state. He contends that the wife never acquired a bona fide domicile in the State of Arkansas and that, since notice of the Arkansas proceeding was given to him by substituted service, he should be permitted to attack the divorce collaterally in this state and to show that his wife resided in Arkansas temporarily only for the purpose of securing her divorce.

At the outset it may be observed that jurisdiction of a court to decree a divorce is based on two fundamental requirements which must be satisfied before it can lawfully act: (1) It must have before it a party who is actually domiciled within its jurisdiction, and (2) it must have jurisdiction of the defendant by procedural due process. Zenker v. Zenker, 161 Neb. 200, 72 N. W. (2d) 809; Davis v. Davis, 259 Wis. 1, 47 N. W. (2d) 338.

It was formerly thought, under authority of Haddock v. Haddock, 201 U. S. 562, 26 S. Ct. 525, 50 L. ed. 867, that a decree of a state in which only the plaintiff was a resident and in which the parties had never cohabited or had their matrimonial domicile was not entitled to recognition in the courts of other states under the full faith and credit clause of the Federal Constitution, where the defendant was served only constructively.[1] Subsequent decisions of the United States Su-

---

[1] U. S. Const. art. IV, § 1, provides: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

28 USCA, § 1738, 62 Stat. 947, provides in part: "* * * records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

preme Court, however, have given a more literal interpretation to the application of the full faith and credit clause to decrees of divorce. In the case of Williams v. North Carolina, 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 279, 143 A. L. R. 1273, it was held that a divorce decree, though rendered solely upon constructive notice against a nonresident defendant, is entitled to full faith and credit where plaintiff had acquired a bona fide domicile in the state granting the divorce. In the second case of Williams v. North Carolina, 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577, 157 A. L. R. 1366, it was held that a divorce decree rendered upon constructive service against a nonresident defendant is not entitled to full faith and credit where the plaintiff has not acquired a bona fide domicile in the state where the divorce is granted. The application of the full faith and credit clause to various facets of migratory divorce actions has been discussed by the United States Supreme Court in Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L. ed. 26, 118 A. L. R. 1518; Rice v. Rice, 336 U. S. 674, 69 S. Ct. 751, 93 L. ed. 957; Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. ed. 1429, 1 A. L. R. (2d) 1355; Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. ed. 1451, 1 A. L. R. (2d) 1376; and Johnson v. Muelberger, 340 U. S. 581, 71 S. Ct. 474, 95 L. ed. 552. While it may be said that these authorities are controlling only as to their particular facts, nevertheless certain general rules may be gleaned from them which are applicable to the case before us: (1) The validity of a decree of divorce, where defendant was not personally served with process in the jurisdiction of the forum but received notice by substituted service and did not appear in the proceedings, may be inquired into in the courts of another state, and under such circumstances the decree is subject to collateral attack. (2) Where, however, the jurisdictional facts as to residence were litigated in the court in which the decree of divorce was rendered, the decree cannot be attacked collaterally in another jurisdiction with respect to jurisdictional facts. The jurisdictional fact of domicile in the divorce-granting forum, having been litigated and determined by a judgment of the court, becomes res judicata, and by force of the full faith and credit clause it may not be questioned collaterally in another jurisdiction. See, also, Sheridan v. Sheridan, 213 Minn. 24, 4 N. W. (2d) 785.

It is the contention of the husband here that the jurisdictional fact of domicile has not been litigated. He concedes that he did appear in the proceedings pending in the State of Arkansas by retaining a firm of attorneys who took a deposition of his wife with reference to the character of her residence in the State of Arkansas. He then instructed his attorneys to file a motion to dismiss his wife's action on the ground that she was not domiciled in the State of Arkansas and was in fact a resident of Minnesota and domiciled there. As a further ground for dismissal, he alleged his wife's unsuccessful attempts to secure a divorce in Minnesota. The motion recites that defendant was appearing specially for the purpose of dismissing the complaint for lack of jurisdiction.

It does not appear from the record before us that the husband was present in person in the Arkansas district at the time the issues were tried. The decree recites, however, that the defendant did appear through his attorneys and that the case was submitted on the plaintiff's complaint, the motion of the defendant to dismiss for lack of jurisdiction, and depositions. The deposition taken by the husband was introduced by the plaintiff. The decree recites that the defendant's appearance was "by special pleading and only for the purpose of contesting jurisdiction." The divorce decree was entered June 10, 1954. On August 16, 1954, the husband, through his attorneys, filed a further motion asking that the decree be vacated for the reason that the plaintiff had never "had a bona fide intent to become domiciled in the State of Arkansas, as evidenced by her immediate return to Minnesota following entry of the decree of divorce granted by this Court," and that at the time the decree was granted her true domicile had been in the State of Minnesota. The motion to vacate was denied by the Arkansas court by order dated February 21, 1956, approximately one and one-half years after it was filed. The reason for the delay does not appear from the record.

It appears from an examination of Davis v. Davis, 305 U. S. 32, 59 S. Ct. 3, 83 L. ed. 26, 118 A. L. R. 1518; Coe v. Coe, 334 U. S. 378, 68 S. Ct. 1094, 92 L. ed. 1451, 1 A. L. R. (2d) 1376; and Sherrer v. Sherrer, 334 U. S. 343, 68 S. Ct. 1087, 92 L. ed. 1429, 1 A. L. R. (2d) 1355, that, where a defendant appears in a foreign

court and participates in the proceedings to the extent that he contests the issue of good-faith domicile or has an opportunity to do so, he has made a general appearance and he may not thereafter relitigate the issue by collateral attack in a sister state. Henricks v. Henricks, 275 App. Div. 642, 92 N. Y. S. (2d) 338. The accepted purpose of a special appearance is to challenge the jurisdiction of the court over the person of the defendant. Here the husband sought to contest the jurisdiction of the Arkansas court over the subject matter of the action. The nature of the plea depends upon its contents, not upon its label. By filing the motion for dismissal the husband chose Arkansas as the forum in which to contest the issue of his wife's good-faith domicile in that jurisdiction. That is precisely the issue he sought to relitigate in the court below. It is true that he might now be in a better position to prevail, since his wife's prompt return to Minnesota after the divorce was granted lends weight to his claim that she never intended to become a resident of Arkansas. However, in view of the long delay by the Arkansas court in denying his motion to vacate its decree, we cannot say that that court did not weigh this fact when it considered that motion. At any rate the question of the wife's intent to make Arkansas her domicile has been passed upon by the Arkansas court, and since this is an area of law in which the Supreme Court of the United States has the last word, we are required to give full faith and credit to the judgment of the Arkansas court.

In the present state of the law, attorneys find it difficult to advise their clients correctly as to the legal effect of a divorce secured in a foreign jurisdiction, and courts find little to say in stating principles of law which express the interest of the state in the marriage contract. In his dissenting opinion in Rice v. Rice, 336 U. S. 674, 676, 69 S. Ct. 751, 752, 93 L. ed. 957, 960, Mr. Justice Jackson observed that "confusion now hath made his masterpiece" in the field of domestic relations. The Superior Court of New Jersey in Roskein v. Roskein, 25 N. J. Super. 415, 96 A. (2d) 437, had before it a case where the plaintiff wife filed for a divorce in Reno, Nevada, 2 days after the expiration of the required 6 weeks' residence. Her return trip ticket was in her possession at the very moment she was testify-

ing in the Reno court that she intended to make Reno her permanent home for an indefinite period of time. The husband appeared by counsel, answered, and contested the jurisdiction of the Nevada court. The Nevada court, however, found that the plaintiff was a bona fide resident of that state and that it had jurisdiction over the parties and the subject matter of the cause. The New Jersey court observed (25 N. J. Super. 424, 96 A. [2d] 441):

"* * * The Nevada proceedings may have been nothing more than mere shadow play, the court formalities an empty show of the judicial proprieties, but the decree is entitled to full faith and credit under [Davis v. Davis, *supra;* Williams cases, *supra;* Sherrer v. Sherrer, *supra;* and Coe v. Coe, *supra*]."

See, also, Hubschman v. Hubschman, 140 N. J. Eq. 284, 53 A. (2d) 787.

An interesting development in the divorce law of Arkansas may be noted. At the time the case before us was decided, that state under Cassen v. Cassen, 211 Ark. 582, 201 S. W. (2d) 585, required domicile as a condition for maintaining a divorce action there. By an act of the Arkansas legislature passed in 1957,[2] that rule has now been changed so that "actual presence" in the state for a period of not less than 3 months constitutes domicile for the purpose of divorce. In discussing the constitutionality of this act in Wheat v. Wheat, 229 Ark. 842, 846, 318 S. W. (2d) 793, 795, the Arkansas Supreme Court observed:

"* * * We should be less than candid if we did not concede that * * * instances of perjury have taken place in Arkansas."

Obviously the purpose of the act is to save the judicial process in Arkansas from the abuse of perjury in divorce actions, as the Arkansas court recognized when it stated that the act (229 Ark. 846,

---

[2]Act 36, Acts of Arkansas 1957, provides in part: "The word 'residence' as used in Section 34-1208 is defined to mean actual presence and upon proof of such the party alleging and offering such proof shall be considered domiciled in the State and this is declared to be the legislative intent and public policy of the State of Arkansas."

318 S. W. [2d] 795) "goes far toward freeing litigants from the temptation to swear falsely on the issue of domicile."

Time will tell if sister states will, under any circumstances, accord full faith and credit to Arkansas divorce decrees granted pursuant to this statute. In the second Williams case Mr. Justice Frankfurter said (325 U. S. 229, 65 S. Ct. 1095, 89 L. ed. 1581, 157 A. L. R. 1369):

"Under our system of law, judicial power to grant a divorce — jurisdiction, strictly speaking — is founded on domicil."

In his concurring opinion in Wheat v. Wheat, *supra,* Mr. Chief Justice Harris of the Arkansas court observed (229 Ark. 851, 318 S. W. [2d] 798):

"* * * in my view, any divorce granted under the provisions of this statute, in numerous of our sister states, will probably be worth only the paper it is written on."

Until realistic legislation is adopted by both Congress and the states, the subject of migratory divorce law will remain an unrewarding field of effort for both the legal profession and the courts.

■ The second appeal relates to the custody of the children. In November 1953, after the wife had left with the children to reside in Arkansas, the husband petitioned the Minnesota court for an ex parte order giving him custody of the children. He did not start a new proceeding but sought to amend the judgment in the Minnesota divorce action which had been dismissed. No notice of this proceeding was given to the wife. In his petition the husband alleged that he feared his wife would leave Arkansas with the children and that he would then be unable to locate them if she were notified. The ex parte order entitled "amended judgment" giving the husband custody of the children was made and entered without the wife being notified or heard. In December 1956 the wife moved that the Minnesota district court vacate the 1953 ex parte "amended judgment" which gave custody of the children to the father. She alleged that the Minnesota court did not have jurisdiction to decide the custody question, since the Minnesota court had not retained jurisdiction and the action had been dismissed without determination as to the custody of the three

minor children, and that she had been denied the right to be heard.

We think the trial court was in error in holding that the ex parte order was valid. Minn. St. 518.17[3] relates to custody of children on judgment in a divorce action. Section 518.18 gives the court authority to revise its order from time to time thereafter "as the circumstances of the parents and the benefit of the children shall require." The husband, relying on Atwood v. Atwood, 229 Minn. 333, 39 N. W. (2d) 103, and Atwood v. Atwood, 253 Minn. 185, 91 N. W. (2d) 728, contends that after denying a divorce a court retains jurisdiction under its general equitable powers with reference to the custody of minor children where their parents are living apart. That was an action in which, while the decree of divorce was denied, the court awarded custody of the minor children to the plaintiff and ordered the defendant to pay permanent alimony and support money. The question presented on that appeal was whether after denying a divorce the trial court (229 Minn. 335, 39 N. W. [2d] 104) "retains jurisdiction in the same proceeding * * * to make an order providing for the custody and the maintenance of the minor children of the parties where such parties, without the benefit of any adjudication, are in fact living separate and apart from each other." While there is some language in the last Atwood case to support the husband's argument, that decision does not go beyond holding that a court has continuing jurisdiction to determine changes in custody after a divorce has been denied, so long as the court at the time of denying the divorce makes some determination as to the disposition of the children. Here the divorce was denied and no order was made relating to custody which continued the jurisdiction of the court.

■ But even assuming the court had retained jurisdiction, the ex parte order must fail because the wife received no notice of it and

---

[3]Minn. St. 518.17 provides: "Upon adjudging the nullity of a marriage, or a divorce or separation, the court may make such further order as it deems just and proper concerning the care, custody, and maintenance of the minor children of the parties and may determine with which of the parents they, or any of them, shall remain, having due regard to the age and sex of such children."

she was denied a hearing. We have held that notice and opportunity to be heard, unless waived, are required in proceedings for the modification of orders, judgments, or decrees in divorce relative to the custody of minor children, regardless of whether provision is made by statute for such notice or hearing. Thompson v. Thompson, 238 Minn. 41, 55 N. W. (2d) 329; Stoll v. Stoll, 243 Minn. 510, 68 N. W. (2d) 367. Since the Minnesota ex parte order relating to custody of the children is void, the Arkansas decree that Pauline was entitled to an absolute decree of divorce and was also entitled to custody of the children must be controlling.

The order of the district court holding that the Arkansas decree is entitled to full faith and credit in this state is affirmed; the order granting custody of the children to the father is reversed.