ELMER G. PEDERSEN v. WALTER JIRSA.

125 N. W. (2d) 38.

November 22, 1963—No. 38,859.

*Nichols & Gillard,* for appellant.
*Olson & Graven,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial. The case is based on the alleged alienation of affections of plaintiff's wife by defendant.

The facts essential to a determination of the issues involved may be briefly summarized. Plaintiff and his wife became acquainted with and were good friends of defendant. For a time plaintiff and his wife were in the tavern business, and defendant was a frequent visitor. It is plaintiff's claim that about January 1960 he began to notice a change in his wife's attitude toward him and he began to suspect that defendant and his wife were quite friendly. He testified that he confronted his wife with this situation on March 15, 1960, and was informed by his wife that she intended to leave him. She then called defendant on the telephone and either plaintiff or his wife asked him to come to their home, which he did. Plaintiff's wife then left the home with defendant. They drove to Boone, Iowa, in defendant's automobile, and the next day drove to Reno, Nevada, sleeping in the car as they traveled. When they arrived in Reno, Mrs. Pedersen contacted an attorney and took up residence in a hotel in Carson City. Defendant left Reno and, after taking a short trip, returned to his home. Mrs. Pedersen obtained work as a maid. She remained in Carson City during the time required by Nevada law for obtaining divorce jurisdiction. The summons in an action for divorce was served upon plaintiff in Minnesota. He made no appearance personally or by way of answer in the Nevada proceeding. An attorney was appointed to represent plaintiff in Nevada, but plaintiff had nothing to do with hiring or procuring such attorney. On May 27, 1960, a divorce was granted to plaintiff's wife by a Nevada court, and the day after she returned to Minnesota. During the pendency of the divorce, she had written to her children that she would return to Minnesota as soon as the divorce was granted. Her testimony in that regard was as follows:

"Q. Your divorce was granted on the 27th?

"A. Yes. * * *

*     *     *     *     *

"Q. When did your children write to you?

"A. They wrote to me all the while I was there.

"Q. When you were there did they ask you to come back right away?

"A.  No, they didn't write to me right away, took about a month before they started writing.

"Q.  A month, and they asked you to come back?

"A.  Yes.

"Q.  You decided to come back then, did you?

"A.  As soon as I got my divorce I told them I would come back.

"Q.  So when you got the letter from the children you decided that you weren't going to make Nevada your home, you were going to come back to Minnesota?

"A.  Yes.

"Q.  As soon as your divorce was final?

"A.  Yes."

Based on the above testimony, the trial court held that the Nevada divorce was void because the Nevada court had no jurisdiction over plaintiff's wife since she had no bona fide intention of making Nevada her home or domicile. Because of that ruling, the court, at the request of plaintiff, refused to permit his wife to testify in behalf of defendant.

The jury returned a verdict in favor of plaintiff.

The questions presented here are: (1) Must the Minnesota court give full faith and credit to the Nevada divorce decree, thereby removing Mrs. Pedersen's incompetence under Minn. St. 595.02(1)? (2) Did the court err in permitting plaintiff to testify to communications made to him by his wife during their marriage? (3) Did the court err in its instruction to the jury as to the essential elements of a cause of action for alienation of affections?

Other questions of minor importance are raised in the briefs but need not be extensively considered in view of the conclusions we have come to.

■  Defendant contends, for instance, that it was error to require him to show his financial worth. Punitive damages are recoverable in an action for alienation of affections where it appears that the conduct of the defendant was malicious or wanton.[1]

---

[1]Kleber v. Allin, 153 Minn. 433, 190 N. W. 786; Spangenberg v. Christian, 151 Minn. 356, 186 N. W. 700.

■ Where punitive damages are recoverable, evidence of defendant's financial condition is proper for consideration.[2]

■ The question whether the Nevada decree of divorce may be collaterally attacked has been recently considered and adequately answered in Cummiskey v. Cummiskey, 259 Minn. 427, 107 N. W. (2d) 864, where the controlling decisions are collected.[3] It would serve no useful purpose to restate what may be found in that case. Under the wife's own testimony, it is clear that she had no intention of acquiring a bona fide domicile in Nevada. Plaintiff never appeared in the foreign state to contest its jurisdiction. It follows that the validity of the divorce decree could be collaterally attacked, and the evidence amply sustains the court's finding of a lack of the prerequisite bona fide domicile in Nevada.

■ In an action for alienation of affections, in order to recover plaintiff husband must prove (1) that he had his wife's affections until defendant came into her life; (2) that he lost his wife's affections; (3) that defendant took an active and intentional part in causing plaintiff to lose his wife's affections; and (4) that defendant acted willfully and intentionally.[4]

It must appear that defendant's wrongful and intentional conduct was the controlling cause of the estrangement between plaintiff and his wife.

■ As to the first two requirements stated above, there is ample evidence to sustain the jury's findings. It is uncontroverted that plaintiff had the affections of his wife until long after defendant became a close friend of both of them. It must also be conceded that he lost such affection when she left him. As to the third and fourth requirements,

---

[2]Nelson v. Halvorson, 117 Minn. 255, 135 N. W. 818; McCarthy v. Niskern, 22 Minn. 90.

[3]See, also, In re Trust Created by Atwood, 262 Minn. 193, 114 N. W. (2d) 284.

[4]Johnson v. Lindquist, 177 Minn. 270, 224 N. W. 839; Mullen v. Devenney, 149 Minn. 251, 183 N. W. 350; Lillegren v. W. J. Burns I. D. Agency, 135 Minn. 60, 160 N. W. 203, L. R. A. 1917B, 679; Spangenberg v. Christian, 151 Minn. 356, 186 N. W. 700.

the evidence is not convincing. Defendant was a close friend of both plaintiff and his wife. Plaintiff's testimony was:

"A. * * * We were good friends. There was no reason why he shouldn't come in.

"Q. Sometimes he would work there?

"A. Yes, he helped.

"Q. Now, what about the period from January, or we will say when —didn't you and your wife and Mr. Jirsa sometimes go out together?

"A. Oh, yes, several times, several times.

"Q. Tell the Jury about that.

"A. We used to go to dances together, and we took a trip last summer down to Milwaukee baseball game."

For a time plaintiff and his wife operated a tavern, and defendant would help out at times. In that regard plaintiff's testimony was:

"A. Well, I guess we have been good friends for three or four years.

\* \* \* \* \*

"Q. Would you tell the Jury about what kind of relationship Mr. Jirsa had with you?

"A. Well, after we got in the tavern, why, he helped us out. He never would take any money for it. I offered to pay him, but he just wouldn't take anything. And he helped—he done me favors, I done him favors, pardon me, and I thought we were getting along as friends.

"Q. You mean you and Mr. Jirsa?

"A. Yes. And that's about all I can say. He was a very, very good friend, as good a friend as I ever thought I ever had."

Cases of this kind are notoriously difficult to defend against. That is particularly true where, as here, the husband chooses to testify to acts of his wife and then seals her lips, when she attempts to rebut such testimony, by asserting his statutory privilege as a husband. Under these circumstances, the testimony of the husband should be carefully scrutinized.

It is true that defendant did take plaintiff's wife to Reno in his car, but there was nothing surreptitious about this action. He was requested, either by plaintiff or his wife, to take her away. He left Reno

as soon as he had deposited her there. While this might lead to a suspicion of improper conduct, there is no evidence to support a finding of such conduct.

■ Aside from inferences that may be drawn mainly from the associations defendant had with both plaintiff and his wife, there is little to sustain the claim that defendant was the active, procuring cause of plaintiff's loss of his wife's affections. In the trial of a case such as this, particularly one based on such questionable evidence, it is important that the jury be instructed properly as to the essential elements of the cause of action. Here, the crucial part of the court's instructions is:

"* * * Now, in order for the Plaintiff Elmer Pedersen to establish liability for recovery of damages in this action, there must be established these facts by a fair preponderance of the evidence: First, that the existence in the first instance of his wife's affections, that is love, society, and companionship of his wife, all or any of them, that is the existence of them; second, the loss or partial loss of them; third, *the Defendant Jirsa's conduct was a substantial factor in the loss of the wife's affections,* or as it is sometimes stated, a controlling or procuring cause in bringing it about. It is not necessary, however, that the Defendant be the only cause or sole cause of the loss of the affections." (Italics supplied and omitted.)

In the crucial instruction, the trial court has equated substantial factor with controlling or procuring cause. Substantial factor is a term taken from the law of negligence in defining proximate cause. Even here it has been disapproved except when its meaning is explained to the jury.[5] It has no place in a case such as we now have before us. A wife conceivably may transfer her affections from her husband to another because of the latter's kindliness, attractiveness, desirability, financial superiority, or some other reason. Such motivation for transfer of affections may be a substantial factor even though the defendant had nothing to do with it. The gravamen of an action for alienation of affections is enticement. It is based on an intentional tort, not negligence. The acts which lead to the loss of affection must be wrongful

[5]Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. (2d) 221.

and intentional, calculated to entice the affections of one spouse away from the other. That is the rule we follow, and it represents the great weight of authority.[6] The mere fact that a wife may become infatuated with a person other than her husband gives no rise for a cause of action for alienation of affections, in the absence of a showing that the other person intentionally and wrongfully caused the husband to lose his wife's affections. The court's charge permitted the jury to find defendant liable even though he was simply a good friend whose company the wife came to prefer to that of her husband.

■ Over the objection of defendant, the court permitted plaintiff to testify to communications made to him by his wife. In that regard, plaintiff testified that when he began to suspect that his wife was becoming friendly with defendant he questioned her about it. His testimony was:

"A.  * * * Why, I asked her, I says, is it true that you are going to run away with Mr. Jirsa.

* * * * *

"A.  Well, she asked me to come in and eat. I told her I wasn't hungry, I wanted to talk to her. So we went in, I asked her, is it true that you are going to run away with Mr. Jirsa. And she says, Yes."

Apparently the court was uncertain as to whether this evidence was admissible. Under our statute, communications between husband and wife are inadmissible without the consent of the other. Minn. St. 595.02(1) provides in part:

"A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage."

In Gjesdahl v. Harmon, 175 Minn. 414, 420, 221 N. W. 639, 641, we said:

"This is a statutory adoption of the common law rule. By force of

---

[6]See, Annotation, 19 A. L. R. (2d) 472.

this statute neither spouse can testify to any statement or communication made by one to the other without the consent of the other. * * * That the other spouse is not a party to the action and has made no affirmative objection does not change the rule, for such testimony is inadmissible even after the other spouse is dead."[7]

As to communications between husband and wife, our statute requires consent of a spouse before the other may disclose such communication. It was error to permit the husband to testify to such communications without the consent of his wife.

In view of the above errors, there must be a new trial.

Reversed.

---

[7]See, also, Conrad v. Peloquin, 177 Minn. 577, 226 N. W. 195.