Hemphill, Oh. J.
The language of the second assignment would lead to the conclusion that the court in the charge stated the general proposition that in this State vindictive or exemplary damages were not recoverable. The terms of the charge are that in actions for killing stock in inclosures the true measure of damages in Texas was full compensation to the party for the injury that he had suffered, and that vindictive or exemplary damages were not recoverable.
The proposition was again repeated in general terms that no vindictive or exemplary damages could be allowed by the jury, but this must be presumed to have been given with direct reference to the facts of the case.
Tlie principal inquiries presented by the assignments are whether in actions for redress on such facts as are presented in the petition the jury is authorized to allow vindictive damages.
2. Was there error in refusing to strike out the plea of tender?
3. Should testimony have been received to prove the expenses incident to 'the prosecution of tlie suit?
That in actions for malicious trespasses on personal property vindicatory or corrective damages may be awarded is a rule as old as it is firmly established. Compensation, in the legal and technical signification of (.he term, is not deemed a sufficient recompense'for injuries of this'character. Compensatory damages are given where the injury is not tainted with fraud, malice, or willful wrong; but where either of these elements intervene another ingredient is added to the ordinary constituent's of injury, viz, the sense of wrong and insult, and damages are given as well for compensation to the sufferer as for the punishment of the offender. In the lauguage of Judge Baldwin, where trespass is committed in a wanton, rude, or aggravated manner indicating a desire to injure, a jury ought lo be liberal in compensating the party injured in all he lias lost in property, in expenses for the assertion of his rights, in feeling or reputation; and even this may be exceeded by setting a public example to prevent tlie repetition of tlie act. In sucli cases there is no certain fixed standard, for a jury may properly (alee into view not only what is due to the party complaining, but to tlie public, by inflicting what are called in law speculative, exemplary, or vindictive damages. (1 Pet. R.. 386; 4 Id., 291; Sedgw. on Dam., 550; Id., 34, 35; Smith v. Sherwood, 2 Tex. R., 463; Graham v. Roder, 5 Tex. R.)
Tlie opinion of the court that vindictive damages could not be recovered in this action was doubtless based upon tlie terms employed in tlie third section of the act of 1840 defining lawful inclosures. (Art. 1384, Digest.)
This substantially declares that if any person whose fence shall be adjudged insufficient shall, &c., maim, wound, or kill any horses, cattle, or hogs, *135 such person shall make full satisfaction to the person injured for all damages by such person sustained. If the terms, “full satisfaction ” be held to mean compensation in its legal and artificial signification, and to'exclude all further redress except such as is embraced under the terms in their restricted sense, then the instruction was justified by the law. But we apprehend tiiat though this interpretation may be placed on plausible grounds, yet that it is not entirely sound.
The Congress may have supposed that a doubt existed whether the measure of redress for the destruction of animals found in the inclosure of another was as full as bylaw is allowed for such trespass without an inclosure. Hence the necessity of declaring that the owner should have full satisfaction for the damages sustained. The intention of the law was to affix to such trespass the like consequences, whether committed within or without an inclosed cultivated field. These consequences depend upon the indications of wantonness, outrage, or malice in the particular case, together with the circumstances in mitigation which may be shown. The facts will vary with the cases, though, doubtless, injuries of this character inflicted without an inclosure will more generally be accompanied with circumstances denoting malice and vexatious intent than when committed within an inclosure.
The object of the statute referring to all its provisions is to require that cleared lands in cultivation should be' inclosed by a sufficient fence, and to secure this it is declared that the owner of cattle, horses, c%c., trespassing on such lands shall make full satisfaction for such trespass to the party injured; but if the fence be insufficient the owner shall not be liable to make satisfaction for such damage, and if horses, cattle, &c., be killed, maimed, or wounded, he shall recover full satisfaction for the damages sustained.
The like phrase, satisfaction for damages, occurs in three different collocations in the statute. If the fence be lawful, two freeholders are to be summoned to declare under oath the damages sustained, and full satisfaction is to be made for the trespass. This evidently contemplates and provides for a case where the cattle, horses, &c., have voluntarily entered the inelosure without any act of their owner inducing or forcing the commission of the trespass. But let us suppose that the owner, with the deliberate purpose to harass and oppress, should throw down the fence of another and drive his cattle and horses iuto his cultivated land : the payment of the assessed value of the crop destroyed or other injury done would not be sufficient to atone for the outrage inflicted as well upon the individual as upon the peace and good order of society. Or take the case where the fences are insufficient. The damages committed by cattle, horses, &c., are declared to be not recoverable. But if the fences were demolished by some marauder, and cattle driven in for the purpose of destroying the crop, &c., the circumstances of outrage attending the trespass would constitute such an injury as would be redressed by courts of justice. And if under these circumstances the horses, cattle, &c., were killed by the person suffering the mischiefs inflicted by such oppressive intrusion, the owner could not recover full satisfaction for the damages sustained b3 the loss of his cattle or other instruments of oppression.
Under circumstances which maybe readily imagined the value of the animal destroyed would be sufficient compensation to (he party injured, but this would be wholly insufficient where an attempt to degrade, insult, and injure was evinced.
It is contended that if the act complained of be a malicious mischief it may be punished by. indictment, and therefore vindictive or exemplary damages should not be awarded. In this case there was no evidence that the party had been indicted or punished for the act. In England, where a party who lias not suffered actual injury lias received from the treasury a portion of the fine imposed on the defendant, lie cannot in an action recover more than nominal damages. (Sedgw., 490; 2 Stark. Ev., 1114.) But in Hew York the *136 fact of (he defendant’s being punished criminally could not be received in evidence to mitigate the damages. The court said that in vindictive actions jurors are authorized to give exemplary damages when the injury is attended with circumstances of aggravation. And the rule is laid down without the qualification that we are to regard either the probable or the actual punishment of the defendant at the suit of the people. (6 Hill R., 465.)
Note 47.—Cook v. Garza, 9 T., 358; Kolb v. Bankhead, 18 T., 228; Reed v. Samuels, 22 T., 114; Neill v. Newton, 24 T., 202; Gordon v. Jones, 27 T., 620; Hughes v. Brooks, 30 T., 379; Shaw v. Brown, 41 T, 446.
That the defendant in this case may be punished criminally lies in contingency, and this is not sufficient to relieve him from exemplary damages in a civil action should the facts justify such damages.
That the construction given to the statute is sound will appear from another consideration. I have very little doubt that if the Legislature were to declare the penal consequences of killing a horse, without reference to an inclosnre, the language of the section would be employed, viz, that the trespasser should make full satisfaction to the owner for the damages sustained. The nice distinctions between compensatory and vindicatory damages would not be recognized. All the damages that lie could recover by the ordinary rales of the law applicable to such cases would be considered (he damages sustained, by whatever name these damages maj' be designated or distinguished, ami for these the trespasser would be required to make full satisfaction. After all Íhat may be said the damages recovered are in a certain sense compensatory. They are paid to the sufferer. He represents himself. It is only by iictioii that lie is supposed to represent the public.
When the ordinary rules of compensation are dispensed with the damages may be denominated exemplary, for the reason that if high they deter from the commission of similar offenses; but they also effect the purpose of compensation, and may therefore be regarded as the damages sustained from the wanton and aggravated outrage.
This vierv of the law of the case dispenses with tiio necessity of examining the other points presented for inquiry.
The tender could have no effect upon the costs of the cause. The offer of the defendant to repair the injury evinced a commendable spirit, and would doubtless have great weight with the jury in mitigation of damages.
The judgment is reversed and the cause remanded for a new trial.
Judgment reversed.