**Garry LUNSFORD and Robert Dail, Relators,**

v.

**Hon. Joseph B. MORRIS, Judge, 101st District Court, Respondent.**

Nos. C–4407, C–5649.

Supreme Court of Texas.

Feb. 10, 1988.

Rehearing Denied March 30, 1988.

Ronald D. Hinds, Dallas, for relators.

Robert R. Roby, Gwinn & Roby, Bruce W. Bowman, Jr., Vial, Hamilton, Koch & Knox, Dallas, Robert R. Estes, Fort Worth, Wayne E. Lee, Dallas, for respondent.

KILGARLIN, Justice.

At issue in this mandamus proceeding is whether a defendant's net worth is subject to pre-trial discovery. We hold that such information is relevant to the issue of punitive or, as they are sometimes called, exemplary damages and therefore discoverable under Tex.R.Civ.P. 166b(2). Consequently, we conditionally grant relators' petition for writ of mandamus.

In the underlying case, relators Lunsford and Dail sued their former employer and others alleging conspiracy and malicious defamation. Their suit sought both actual and punitive damages. In connection with the latter claim, Lunsford and Dail requested production of financial statements and other documents bearing on the defendants' net worth. The trial court denied the requested discovery,[1] and we granted leave to file a petition for writ of mandamus after denial by the court of appeals.

We first consider whether evidence of net worth is discoverable. In Texas, a party "may obtain discovery regarding any matter which is relevant to the subject matter" of a pending action. Tex.R.Civ.P. 166b(2)(a). Further, the same rule provides "it is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Since the earliest Texas decisions, punitive damages have been allowed, among other things, to punish a wrongdoer. "[P]unitive damages are justified by [a] blending of the interests of society with those of the aggrieved individual, thus giving damages not only to recompense the sufferer, but to punish the offender." *Graham v. Roder*, 5 Tex. 141, 149 (1849). In addition to punishment, punitive damages are allowed to deter the same or sim-

1. The order denying discovery was signed by Judge Craig T. Enoch, then judge of the 101st District Court. Relators originally named Judge Enoch as respondent in C–4407. While C–4407 was pending before our court, Judge Joseph B. Morris (the present respondent) succeeded Judge Enoch as judge of the 101st District Court. We abated our proceedings so that Judge Morris would have an opportunity to reconsider Judge Enoch's order denying discovery. By an order signed on September 8, 1987, Judge Morris "affirmed and adopted" Judge Enoch's prior order.

In a separate cause numbered C–5649, relators petitioned this court to prohibit Judge Enoch (later Judge Morris) from proceeding to trial pending our disposition of the mandamus requested in C–4407.

ilar future conduct. *Cole v. Tucker*, 6 Tex. 266, 268 (1851). Our recent decisions have continued to recognize punishment and deterrence as co-purposes of punitive damages awards. *See, e.g., Hofer v. Lavender*, 679 S.W.2d 470, 474–75 (Tex.1984); *Pace v. State*, 650 S.W.2d 64, 65 (Tex.1983).

At least forty-three states now allow evidence of net worth to be discovered and admitted for the limited purpose of assessing punitive damages.[2] Substantial federal court authority also supports the proposition that net worth is admissible on punitive damages.[3] The United States Supreme Court recognizes and adheres to the majority view. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981). Also, the Restatement view is in accord: "The wealth of the defendant is also relevant ...; the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person." Restatement (Second) of Torts § 908 (comment e) (1977). *See also,* Prosser & Keeton, *Prosser and Keeton on Torts* § 2 at 15 (5th ed. 1984).

Texas has allowed neither discovery nor admission of evidence concerning a defendant's net worth. One hundred years ago, this court determined that the injury inflicted, rather than the ability of a defendant to pay, was the more important consideration. *Young v. Kuhn*, 71 Tex. 645, 652, 9 S.W. 860, 862 (1888). This view has persisted to the present day despite overwhelming authority to the contrary. *See Murphy v. Waldrip*, 692 S.W.2d 584, 588 (Tex.App.— Fort Worth 1985, no writ). A defendant's "ability to pay" bears directly on the question of adequate punishment and deterrence. That which could be an enormous penalty to one may be but a mere annoyance to another. For example, one hundred dollars as a punitive award against a

2. *Clary Ins. Agcy. v. Doyle*, 620 P.2d 194, 205 (Alaska 1980); *Grant v. Arizona Public Service Co.*, 133 Ariz. 434, 652 P.2d 507, 522 (1982); *Berkeley Pump Co. v. Reed–Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128, 137 (1983); *Coy v. Superior Court*, 58 Cal.2d 210, 373 P.2d 457, 23 Cal.Rptr. 393 (1962); *Leidholt v. District Court*, 619 P.2d 768, 770 (Colo.1980); *Bennett v. Hyde*, 6 Conn. 24 (1825); *Bryan v. Thos. Best & Sons, Inc.*, 453 A.2d 107, 108 (Del.Super.1982); *Rinaldi v. Aaron*, 314 So.2d 762, 763 (Fla.1975); *Wilson v. McLendon*, 225 Ga. 119, 166 S.E.2d 345, 346 (1969); *Beerman v. Toro Mfg. Corp.*, 1 Haw. App. 111, 615 P.2d 749, 755 (1980); *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661, 666–67 (1983); *Moore v. Jewel Tea Co.*, 116 Ill.App.2d 109, 135, 253 N.E.2d 636, 648 (1969), *aff'd*, 46 Ill.2d 288, 263 N.E.2d 103 (1970); *Hibschman Pontiac, Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977); *Hall v. Montgomery Ward & Co.*, 252 N.W.2d 421, 424 (Iowa 1977); *Ettus v. Orkin Exterminating Co., Inc.*, 233 Kan. 555, 665 P.2d 730, 738 (1983); *Hale v. Aetna Casualty & Surety Co.*, 273 So.2d 860, 863 (La. App.1973); *Hanover Ins. Co. v. Hayward*, 464 A.2d 156, 158 (Me.1983); *Heinze v. Murphy*, 180 Md. 423, 24 A.2d 917 (1942); *Pedersen v. Jirsa*, 267 Minn. 48, 125 N.W.2d 38, 41 (1963); *Hunter v. Williams*, 230 Miss. 72, 92 So.2d 367, 369 (1957); *Golston v. Lincoln Cemetery, Inc.*, 573 S.W.2d 700, 708 (Mo.1978); *Edquest v. Tripp & Dragstedt Co.*, 93 Mont. 446, 19 P.2d 637, 640–41 (1933); *Southern Pacific Co. v. Watkins*, 83 Nev. 471, 435 P.2d 498, 513 (1967); *Belknap v. Railroad*, 49 N.H. 358 (1870); *Gierman v. Toman*, 77 N.J.Super. 18, 185 A.2d 241, 245 (1962); *Aragon v. General Electric Credit Corp.*, 89 N.M. 723, 557 P.2d 572, 575 (Ct.App.1976); *Rupert v. Sellers*, 48 A.D.2d 265, 368 N.Y.S.2d 904, 910–13 (1975); *Harvel's Inc. v. Eggleston*, 268 N.C. 388, 150 S.E.2d 786, 790 (1966); *King v. Hanson*, 13 N.D. 85, 99 N.W. 1085, 1092 (1904); *Wagner v. McDaniels*, 9 Ohio St.3d 184, 459 N.E.2d 561, 564 (1984); *Smith v. Autry*, 69 Okl. 28, 169 P. 623 (1918); *Pelton v. General Motors Acceptance Corp.*, 139 Or. 198, 7 P.2d 263, 266 (1932); *Aland v. Pyle*, 263 Pa. 254, 106 A. 349 (1919); *Hargraves v. Ballou*, 47 R.I. 186, 131 A. 643, 646 (1926); *Hicks v. Herring*, 246 S.C. 429, 144 S.E. 2d 151, 154 (1965); *Smith v. Weber*, 70 S.D. 232, 16 N.W.2d 537, 540 (1944); *Odom v. Gray*, 508 S.W.2d 526 (Tenn.1974); *Wilson v. Oldroyd*, 1 Utah 2d 362, 267 P.2d 759, 766 (1954); *Parker v. Hoefer*, 118 Vt. 1, 100 A.2d 434, 446–47 (1953); *Weatherford v. Birchett*, 158 Va. 741, 164 S.E. 535, 537 (1932); *Riddle v. McGinnis*, 22 W.Va. 253 (1883); *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 294 N.W.2d 437, 447 (1980); *Town of Jackson v. Shaw*, 569 P.2d 1246, 1255 (Wyo. 1977).

3. *Ramsey v. Culpepper*, 738 F.2d 1092, 1099 (10th Cir.1984); (New Mexico law); *Brink's Inc. v. City of New York*, 717 F.2d 700, 707 (2nd Cir.1983) (New York law); *Spaeth v. Union Oil Co. of California*, 710 F.2d 1455, 1460 (10th Cir.1983), *Malandris v. Merrill Lynch*, 703 F.2d 1152, 1177 (10th Cir.1981) (Colorado law); *Harris v. Harvey*, 605 F.2d 330, 340–41 (7th Cir. 1979); *Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1389 (5th Cir.1977) (New York law); *Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772 (3rd Cir.1975); *Clark v. Bunker*, 453 F.2d 1006, 1012 (9th Cir.1972).

single mother of three small children may be a greater deterrent than one hundred thousand dollars awarded against a major corporation whose directors are shielded from the stark reality of harm done by the paneled walls and plush carpet of the corporate boardroom. We hold that in cases in which punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth.

Although the issue in this case is one of discovery of net worth, cases involving admissibility of net worth into evidence are instructive. We therefore review briefly the positions taken in this and in other jurisdictions on discoverability and admissibility of net worth evidence. Just recently this court, in *Birchfield v. Texarkana Memorial Hospital d/b/a Wadley Hospital,* 747 S.W.2d 361 (1987), held admissible evidence of the financial condition of the hospital to demonstrate the hospital's ability to provide proper facilities. While it is true that this holding went to a gross negligence inquiry, it nevertheless demonstrates that we have previously permitted admission of evidence of the financial condition of a defendant.

Some states allowing discovery of net worth require a *prima facie* showing of entitlement to punitive damages before information about a defendant's net worth may be sought. *See, e.g., Curtis v. Partain,* 272 Ark. 400, 614 S.W.2d 671 (1981). Other courts would make a plaintiff wait until trial, after the jury has heard evidence warranting punitive damages, before evidence of net worth is introduced. *Ruiz v. Southern Pacific Transportation Co.,* 97 N.M. 194, 638 P.2d 406, 414 (N.M.Ct. App.1981). One state subjects a plaintiff to a show-cause hearing in which a *prima facie* right to punitive damages must be proved. *Leidholt v. District Court,* 619 P.2d 768, 771 (Colo.1980). In Wyoming, a plaintiff must overcome two hurdles. First, the plaintiff must make a *prima facie* showing of entitlement to punitive damages before the trial court permits discovery of net worth. Then, a trial involving punitive damages is bifurcated: a jury must again find a plaintiff is entitled to punitive damages; and then the jury may consider evidence of net worth to determine damages. *Campen v. Stone,* 635 P.2d 1121, 1132 (Wyo.1981); *see also* Annot., 32 A.L.R.4th 432 (1984).

Our rules of civil procedure and evidence do not require similar practices before net worth may be discovered. Absent a privilege or specifically enumerated exemption, our rules permit discovery of any "relevant" matter; thus, there is no evidentiary threshold a litigant must cross before seeking discovery. Tex.R.Civ.P. 166b(2)(a). Neither do the rules of evidence contemplate exclusion of otherwise relevant proof unless the evidence proffered is unfairly prejudicial, privileged, incompetent, or otherwise *legally* inadmissible. Tex.R.Civ. Evid. 401, 403, 501–10, 601. *Accord, Coy v. Superior Court,* 58 Cal.2d 210, 373 P.2d 457, 23 Cal.Rptr. 393 (1962). We do not circumscribe, however, a trial judge's authority to consider on motion whether a party's discovery request involves unnecessary harassment or invasion of personal or property rights. *See* Tex.R.Civ.P. 166b(5) and *compare* Tex.R.Civ.P. 13.

*Young v. Kuhn,* 71 Tex. 645, 9 S.W. 860 (1888), predates both our rules of civil procedure and evidence and is no longer controlling. In a suit in which exemplary damages may be recovered, we hold the defendant's net worth is "relevant" and therefore discoverable under Tex.R.Civ.P. 166b(2)(a).[4] Because no privilege or other specific exemption has been shown, the trial court abused its discretion by refusing to permit the requested discovery. We are confident the trial judge will withdraw his order disallowing discovery of the defendants' net worth; the writ of mandamus will issue only if he fails to do so. Relators' request for a writ of prohibition is conditionally dismissed as moot.

CULVER, J., not sitting.

---

4. We view as unnecessary and ill-advised any attempt on the limited record before us to address admissibility concerns raised in the motions for rehearing. This includes matters pertaining to when net worth is admissible, how it will be admitted, or what it means.

ON MOTION FOR REHEARING

GONZALEZ, Justice, dissenting.

The court has glossed over the fact that this is a mandamus proceeding. Since the trial judge was following over 100 years of precedent, it is preposterous to conclude that he clearly abused his discretion. I would grant the motion for rehearing, and deny the writ. In the alternative, we should adopt some guidelines and/or make rule changes in order to avoid some of the practical problems that will arise as the bench and the bar struggle to implement this decision.

We have considered mandamus to be proper in some cases to compel a trial court to allow discovery. *Jampole v. Touchy*, 673 S.W.2d 569, 572–573 (Tex.1984); *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977); *Barker v. Dunham*, 551 S.W.2d 41 (Tex. 1977). In addition, mandamus has been issued to correct improper allowances of discovery by a trial court. *See, e.g., General Motors Corp. v. Lawrence*, 651 S.W.2d 732 (Tex.1983); *West v. Solito*, 563 S.W.2d 240 (Tex.1978); *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434 (1959). However, mandamus is an extraordinary writ that should be used *only* when there has been a violation of a clear right possessed by the relator. *Neville v. Brewster*, 163 Tex. 155, 352 S.W.2d 449, 452 (1961); *See State Bar of Texas v. Heard*, 603 S.W.2d 829, 833 (Tex.1980).

Under *Young v. Kuhn*, 71 Tex. 645, 9 S.W. 860 (1886) and its progeny, the trial court in this case did *not* abuse its discretion in disallowing the discovery. Our most recent cases establish that a relator who attacks a trial court ruling as an abuse of discretion "labors under a heavy burden.... The relator must establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision." *Johnson v.*

*Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). In our case, the court had but one choice—to follow our pronouncements that a defendant's net worth was *neither* discoverable *nor* admissible to prove punitive damages. *It would have been an abuse of discretion for the trial court to grant the discovery request under the law as it existed at that time.* Therefore, the mandamus should be denied.[1]

The majority opinion does not decide the question of admissibility of net worth evidence. Without guidelines and/or corresponding rule changes, we have needlessly planted the seeds of confusion that will result in years of litigation as practitioners and the bench strive to comply with this opinion.

In order for the benefits sought to be achieved by the court's opinion to fully inure to the citizens of Texas, the procedure employed to offer evidence of net worth must allow the defendant's conduct to be judged as much as possible in a prejudice-free atmosphere. It is clear that the ability of a defendant to pay has no relevance to the issues of liability or compensatory damages. Accordingly, there is no legitimate need for a jury to be made aware of a defendant's net worth when determining these issues.

To preserve the right of all litigants to a fair trial, we should adopt procedural guidelines for cases where punitive damages may be awarded and pre-trial discovery and presentation of net worth evidence is permissible. The utilization of a bifurcated trial procedure would prevent net worth evidence from prejudicially impacting liability and compensatory damage findings when punitive damages are claimed. The idea of a bifurcated trial procedure to separately determine issues of liability and damages is not new. Federal

---

1. It doesn't make any sense to say that the purpose of punitive damages is to deter others and to punish wrongdoers and then keep evidence of wealth from the jury. So, generally, I agree with the court that a jury should be able to consider the financial condition of the defendant in order to determine exemplary damages. Thus, the question is not *if* this evidence

is relevant but *when* it is relevant. However, the more basic question here is whether the writ of mandamus is a proper way or vehicle to make this substantive change in the law. I don't think so. If we had intended to overrule *Young v. Kuhn,* and its progeny when Tex.R.Civ. P. 166b was changed, we certainly would have announced our intention.

district courts are empowered with discretionary authority to order a bifurcated trial for this purpose. Fed.R.Civ.P. 42(b); *see* 9 Wright & Miller, Federal Practice and Procedure §§ 2388–2390 (1971); *see also* Annotation, *Propriety of Ordering Separate Trials as to Liability and Damages, Under Rule 42(b) of Federal Rules of Civil Procedure in Actions Involving Personal Injury, Death or Property Damage,* 78 A.L.R.Fed. 890 (1986). This procedure has recently been upheld for use in Texas diversity actions. *Rosales v. Honda Motor Co. Ltd.,* 726 F.2d 259, 260 (5th Cir.1984).

The Supreme Court of Wyoming in *Campen v. Stone,* 635 P.2d 1121, 1131 (Wyo. 1981) recently instituted a bifurcated trial procedure to remedy a situation similar to that which has been created by the majority opinion. The "Wyoming Plan," which requires that plaintiffs make a prima facie showing that a viable issue exists for punitive damages before pre-trial discovery is permitted, provides a good model for Texas. A bifurcated trial procedure would work as follows:

1. The plaintiff would claim in his petition a right to punitive damages and then seek pre-trial discovery of defendant's net worth.

2. The defendant would move for a protective order requiring the plaintiff to make a prima facie showing to the trial court that a viable issue exists for punitive damages. Upon such a showing, the pretrial discovery would be allowed. If plaintiff's claim for punitive damages is groundless and brought in bad faith, Tex.R.Civ.P. 13 authorizes the trial court to impose sanctions.

3. At trial, if sufficient evidence is produced establishing a prima facie case for punitive damages, the jury charge would make provision for compensatory damages and additionally ask the jury whether punitive damages should or should not be awarded. However, no provision would be made for the jury to determine the amount of punitive damages to be awarded at that point.

4. If the jury finds that punitive damages should be awarded, it would then hear evidence of the defendant's net worth and return a separate verdict setting the amount of punitive damages.

See *Campen v. Stone,* 635 P.2d at 1132; *see also* Annotation, *Necessity of Determination or Showing of Liability for Punitive Damages Before Discovery or Reception of Evidence of Defendant's Wealth,* 32 A.L.R. 4th 432 (1984). Under this plan, the admission of net worth evidence would constitute reversible error only during the first stage of a bifurcated trial.

I am also concerned that the court's opinion will create uncertainty regarding a number of other issues. The most apparent area of uncertainty is the failure to define the term "net worth". No fewer than eighteen times does the court's opinion refer to "net worth". However, despite the repetitious use of this term, the court has failed to inform the bench and bar what "net worth" is or how it should be calculated. Is a single balance sheet sufficient to identify "net worth" or is additional financial information necessary? Since "net wealth" was what the petitioner actually requested to be discovered in this case, is this synonymous with "net worth?" How do we measure net worth? Do we prove "net worth" by profit and loss statements, income tax returns, cash liquidity, a Fortune 500 listing, Standard & Poor's rating, and the like? "I know it when I see it" is not much of a standard. Without objective criteria, a case by case determination will undoubtedly yield a wide disparity of results. Perhaps we should refer all of these questions to our Rules of Procedure and/or Evidence committees for recommendations. In the absence of guidance, confusion will prevail as practitioners and judges attempt to ascertain the components of "net worth".

Aside from definitional problems, the respondent raises many questions in his motion for rehearing. For example:

*Does a defendant's net worth include the cash surrender value or the limits of liability of an insurance policy? If*

*the insurer is defending under a reservation of rights, would the insurance still be includable in the calculation of the assets? Likewise, would it make a difference if the defendant's insurance policy did or did not provide coverage for exemplary damages?*

Assuming that a plaintiff attempts to offer net worth evidence that includes insurance coverage, the defendant should be able to keep this out pursuant to Tex.R.Civ. Evid. 411 which provides that liability insurance is inadmissible to prove negligent or otherwise wrongful conduct. Alternatively, such evidence could be kept out on the theory that the insurer's duty to indemnify depends on a liability adjudication against the insured without respect to the insurer's potential liability. The trial court judge would also have the discretion under Tex.R.Civ.Evid. 403 to exclude the evidence as misleading or unfairly prejudicial.

*In an action against a corporate division or subsidiary should the net worth of the of the parent be considered? Would a different rule apply to a non-profit defendant?*

Once again, these questions involve considerations that properly should be balanced by the trial court judge pursuant to Tex.R.Civ.Evid. 403 when deciding the issue of admissibility.

*Will a plaintiff be entitled to only an interrogatory answer stating what defendant's net worth is, or will a plaintiff be entitled to all of the underlying financial data necessary to make his own calculations?*

During discovery a plaintiff should generally be entitled to copy, at his own expense, all of the relevant financial documents. However, this will be problematic since the components of "net worth" are unknown. Consequently, the trial court will need to determine exactly what constitutes "net worth" and then decide which documents are relevant to calculate "net worth". As discussed previously, this situation is unsatisfactory and needs to be remedied by a clear definition of the term "net worth."

*At what point in time is a defendant's net worth relevant? Should the jury receive evidence of net worth as of the time the conduct occurred or at the time of trial which may be several years later?*

Generally, assuming liability for punitive damages, evidence of defendant's net worth at the time of the conduct, as well as subsequent gains and losses, is at least relevant and may be considered by a jury. However, since this issue also involves considerations of admissibility it would need be resolved by the trial court on a case by case basis. Tex.R.Civ.Evid. 611 provides that the trial court "shall exercise reasonable control over the mode and order of ... presenting evidence as to (1) make the ... presentation effective for the ascertainment of the truth...."

*What safeguards exist to ensure that a relatively poor defendant in a multi-defendant case will not be unjustly punished by a jury on the basis of information of the other defendant's ability to pay a large judgment?*

Recent tort reform legislation provides the answer to any possible problem in this area.

In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant.

Tex.Civ.Prac. & Rem.Code § 41.005 (Vernon Supp.1988). This recently enacted statute codified what undoubtedly was the common law. It provided that no defendant should be subject to primary or contributory liability for exemplary damages based upon conduct attributable to another tortfeasor. Similarly, the financial resources of any one defendant should not be relevant to punitive damages awarded against another defendant. *See also* Tex. R.Civ.Evid. 105(a) (when evidence is admissible as to one party but not admissible as to another, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly).

In summary, I would grant the motion for rehearing and deny the writ. In the alternative, I would adopt the above guidelines.

PHILLIPS, Chief Justice, dissenting.

## ON MOTION FOR REHEARING

I join in that portion of Justice Gonzalez's dissent which discusses the nature of the writ of mandamus. I do not believe the trial judge clearly abused his discretion in this case. The resolution of this issue, although important to the jurisprudence of the state, should properly await another day.

In light of that conclusion, I do not join in the remainder of Justice Gonzalez's opinion. In particular, I disagree with the apparent suggestion that this court should mandate a bifurcated trial whenever punitive damages are to be awarded. I believe this is an unnecessarily cumbersome means of protecting the defendant's legitimate interests against prejudice and the invasion of privacy. The trial court can more efficiently accomplish these objectives by placing limits on the scope and nature of discovery, issuing protective orders, and giving such jury instructions as may be appropriate.

I agree with Justice Gonzalez's observation that most of the questions raised by respondent are properly left to the discretion of the trial court. The trial court is in the best position to determine how to balance the right to legitimate discovery with the right to avoid harassment or prejudice. The exact parameters of this new right to discovery, including those problems raised in the remainder of Justice Gonzalez's dissent, should be resolved in subsequent litigation by the orderly development of case authority.