Petition for Writ of Mandamus Conditionally Granted in
Part, and Denied in Part, and Majority and Concurring Opinions filed October
20, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00123-CV

____________

 

IN RE MARK A. JACOBS, M.D., DEBRA C. GUNN, M.D., and
OBSTETRICAL AND GYNECOLOGIST ASSOCIATES, P.A., Relators

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

C O N C U
R R I N G   O P I N I O N

The Court today reaches a result consistent with the current
state of Texas law.  I write separately only to note that the current Texas
rule on net-worth discovery is now decades-old and, in light of the evolution
of Texas law, needs to be revisited.  The instant case illustrates how it
contributes to unnecessary Asatellite litigation@ unrelated to the merits of the case
and often produces expense and burden far exceeding any potential benefit.

A brief review of the history of this dispute is
illustrative.  It is noteworthy that the medical incident made the basis of
this lawsuit occurred in September 2004.  Five years later this legal dispute
remains unresolved C even at the trial-court level.








The specific controversy over net-worth discovery is fast
approaching its second anniversary and has continued largely unabated. 
It began with an exhaustive request for financial records covering a multi-year
period.  Those discovery requests inevitably produced C over many months C a flood of objections, hours of
court hearings, multiple court orders, and the current mandamus
proceeding with multiple appellate briefs from each side.  The cost to the
parties has no doubt been significant.  The level of chaos in this case C a tort case with themes common to
many such disputes C has given me pause, with a belief that some assessment is in
order as to the efficacy of this process as well as the relative value of the
discovery in question.

A.        The
Role of Net-Worth Discovery in Resolving Material Case Issues

Under the Rules, a trial judge should limit discovery for
which the burden or expense outweighs the likely benefit.  Tex. R. Civ. P.
192.4(b).  In weighing these factors, courts are to consider, among other
things, the importance of the proposed discovery in resolving the material
issues of the lawsuit.  See id.  

As a general rule, evidence of a party=s wealth is irrelevant and
prejudicial.  See Carter v. Exxon Corp., 842 S.W.2d 393, 399 (Tex. App.CEastland 1992, writ denied). 
Consequently, it is almost always inadmissible at trial.  See Cooke v.
Dykstra, 800 S.W.2d 556, 562 (Tex. App.CHouston [14th Dist.] 1990, no writ); Carter,
842 S.W.2d at 399.

In Lunsford v. Morris, however, the Texas Supreme
Court carved out a narrow exception to the general rule of inadmissibility,
allowing parties to discover and introduce evidence of a defendant=s net worth in cases in which
punitive or exemplary damages could be awarded.  746 S.W.2d 471, 473 (Tex.
1988) (orig. proceeding), disapproved of on other grounds by Walker v.
Packer, 827 S.W.2d
833, 842 (Tex. 1992) (orig. proceeding).  However, Lunsford properly
should be considered in its historical context.








Specifically, in 1981, the Texas Supreme Court decided to
re-visit the standard of review used in reviewing jury awards of punitive
damages.  See Burk Royalty Co. v. Walls, 616 S.W.2d 911, 920 (Tex. 1981). 
Under the prior standard, a defendant could successfully challenge a
punitive-damages award on appeal simply by pointing to any evidence suggesting
he exercised some care.  See id. at 921.  However, the Court
chose to depart from that standard because it was seen as creating a virtually
impossible hurdle to the recovery of punitive damages Asince anything may amount to some
care.@  Id.  In its place, the Court
substituted a no-evidence standard of review that effectively Agave >the jury greater discretion to award
punitive damages.=@[1]

In addition, the Burk Court authorized plaintiffs to
prove Agross negligence,@ the standard for imposing punitive
damages, merely by constructive notice of the defendant=s subjective state of mind.  See
Burk, 616 S.W.2d at 922.  Four years later, the Court re-affirmed that
holding and also expanded the definition of Agross negligence@ to give plaintiffs additional
methods to prove a defendant=s culpability for exemplary damages:

[T]he test for gross negligence is both an objective
and a subjective test.  A plaintiff may prove a defendant=s gross negligence by proving that the defendant had
actual subjective knowledge that his conduct created an extreme degree of
risk.  In addition, a plaintiff may objectively prove a defendant=s gross negligence by proving that under the
surrounding circumstances a reasonable person would have realized that his
conduct created an extreme degree of risk to the safety of others.

 

Williams v. Steves Indus., Inc., 699 S.W.2d 570, 573 (Tex. 1985) (emphasis added), superseded
by statute as recognized by Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 20
n.11 (Tex. 1994).








In 1987, the Texas Legislature began to scale back the
availability of punitive damages by enacting Chapter 41 of the Texas Civil
Practice and Remedies Code.[2]  However,
while the original version of Chapter 41 introduced basic limitations to the
recovery of punitive damages,[3] the protections
it extended to defendants pale in comparison with those found in the version
currently in effect.[4]  Lunsford
was decided the following year but, apart from a brief mention in one of the
dissenting opinions, ignores any discussion of the 1987 reforms or their effect
on the Court=s expansive exemplary-damage decisions from earlier that decade.  See
Lunsford, 746 S.W.2d at 476 (Gonzalez, J., dissenting).

In 1995, the Legislature passed more sweeping tort reform to
the substantive and procedural law governing punitive damages.  See Act
of April 11, 1995, 74th Leg., R.S., ch. 19, ' 1, 1995 Tex. Gen. Laws 108, 108B13 (amended 2003) (current version at
Tex. Civ. Prac. & Rem. Code Ann. '' 41.001B.013 (Vernon 2008 & Supp.
2009)).  Chapter 41 was significantly rewritten to provide defendants dramatic
protection from punitive-damage awards, including:

$          Juries could no longer award exemplary
damages intended solely to serve Aas
an example to others,@ but were instead limited to assessing damages with
the purpose of punishing the defendant.








$          The Legislature dramatically expanded
Chapter 41=s coverage to apply to all but a very few types of
tort actions.

$          A plaintiff=s burden of proof for punitive damages was elevated to require proof of
all elements by clear and convincing evidence.

$          With few limitations, a defendant could no
longer be exposed to punitive damages because of another person=s criminal act.

$          The Legislature lowered the existing cap on
punitive damages.

$          Upon a defendant=s motion, the trial court had to bifurcate the jury=s determination of the amount of punitive damages, and
evidence of a defendant=s net worth could not be admitted during the liability
phase of the trial.

 

Id.  These
substantive and procedural amendments changed the legal landscape on two
levels.  First, they further limited the amount of punitive damages that
could be assessed.  See id. ' 1 secs. 41.007, 41.008.  Second, and
more significantly, these revisions dramatically lessened the chances of any
punitive-damage recovery by a claimant.  See id. ' 1 secs. 41.001(5), 41.002,
41.003(b), 41.005.

In 2003, the Legislature further eroded a plaintiff=s ability to recover punitive damages
as a part of comprehensive tort-reform legislation.[5] 
Now, unlike the general rule permitting a civil verdict upon the vote of only ten
jurors, an award of punitive damages requires a unanimous verdict as to
liability for, and the amount of, such damages.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 41.003(d) (Vernon 2008 & Supp. 2009); Tex. R. Civ. P.
292; DeAtley v. Rodriguez, 246 S.W.3d 848, 850 (Tex. App.CDallas 2008, no pet.).








In their brief, the McCoys acknowledge the dramatic shift in
the law on punitive damages since Lunsford, as the Legislature has
repeatedly acted Ato tightly restrict the ability of litigants to seek and
recover exemplary damages.@[6]  Thus, in the current legal climate,
far fewer cases are likely to present fact issues for trial as to
punitive-damage liability than when Lunsford was decided more than two
decades ago.[7]  Accordingly,
because net-worth discovery may serve little practical purpose in many cases,[8]
trial courts performing a benefit-to-burden analysis should consider
appropriate management of the scope of such discovery corresponding to its
utility in resolving these important issues.  See Tex. R. Civ. P.
192.4(b).

B.        Burden
and Expense of Net-Worth Discovery

The benefits of net-worth discovery are likely limited in
most cases, but the direct and indirect costs may not be.  Of course, a case
against a publicly traded corporation may present little problem in this
respect, as its net worth should be discernible simply from the contents of a
widely available annual report.  Under that scenario, the burden and expense of
the proposed discovery would be minimal.  See id.








A private individual, however, presents a far different
profile with, at minimum, potentially serious issues as to privacy rights and
availability of responsive information.  Net-worth discovery as to an
individual will almost inevitably require C and deserve C much more management and oversight
by the trial court.[9]  See In re
Weekley Homes, L.P., ___ S.W.3d ___, 52 Tex. Sup. Ct. J. 1231, 2009 WL
2666774, at *4 (Tex. Aug. 28, 2009) (orig. proceeding) (ATo the extent possible, courts should
be mindful of protecting sensitive information and should choose the least
intrusive means of retrieval.@).

In this case, the McCoys sought audited financial statements
that, while invasive, may at least represent one of the most accurate and
efficient ways for indicating an individual=s net worth, if available.[10]
However, they also sought countless other categories of documents that have
been repeatedly held undiscoverable, such as income-tax returns,[11]
or which possess only the most indirect and tenuous connection to net worth. 
Among this latter category of documents are the McCoys= requests for (1) HUD statements
reflecting the sale or purchase of real estate; (2) Aany and all contracts that you are a
party to with any health insurance company, HMO, including Medicare and/or
Medicaid, managed care entity, or hospital@; (3) any documents reflecting
accounts receivable, from any time period, for the provision of medical care;
(4) accounts receivable due to the defendant=s Aparticipation in any clinical drug
trials, medical device trials, or other medical product trials@ for the purpose of obtaining FDA
approval; and (5) all medical bills issued for an entire calendar year,
presumably as to all of the physicians= patients, Atouching, concerning, or dealing with@ the provision of medical care.








This sort of invasive discovery generally raises very serious
privacy concerns, but that is not its only cost.  It also imposes additional
burden and expense on the parties and their attorneys, as well as occupying the
limited resources of the trial court and, now, this appellate court.  See
Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 331B32 (Tex. 1993) (Gonzalez, J.,
concurring) (commenting on the privacy concerns and potential for abuse
inherent in the Aunlimited discovery . . . of sensitive, private, and
confidential financial information@).  

However, this sort of discovery should not be unexpected
given the Texas Supreme Court=s lengthy silence as to both the precise definition of Anet worth@ in this context and the proper
boundaries for the discovery and ultimate presentation of information as to a
defendant=s net worth:

This Court in Lunsford failed to
define net worth and failed to suggest a procedure for placing such evidence
before the jury.  I predicted then that in the absence of guidance from this
Court, Aconfusion will prevail as practitioners and judges
attempt to ascertain the components of >net
worth.=@  Lunsford, 746 S.W.2d at 475.

Conflicting appellate court decisions on
the meaning of the term Anet worth@
are evidence of the confusion surrounding this fundamental issue.  This
confusion should be resolved by this Court.

 

Wal-Mart, 868
S.W.2d at 330 (Gonzalez, J., concurring) (citations omitted); see also
Lunsford, 746 S.W.2d at 476 (Gonzalez, J., dissenting) (calling for clear
definition of term Anet worth@ and clarity on types of documents relevant to calculate it).

Here, the majority attempts to fairly bridge some of this gap
by offering a solid definition of Anet worth@ as assets minus liabilities.  See
Black=s Law Dictionary 1041 (6th ed. 1990); Wal-Mart, 868 S.W.2d at 330B31 (Gonzalez, J., concurring).  Yet,
even this pronouncement may still lead to disagreements about the documents
that are relevant and discoverable to calculate this figure, in light of the
relative lack of guidance on this issue.








Trial courts have the necessary management tools to control
the sequence, timing, and scope of discovery to minimize burden, maximize
efficiency, and protect privacy rights.[12] 
See Tex. R. Civ. P. 166, 192.  Still, we must acknowledge that there are
literally hundreds of Texas trial-court judges C spread over 254 counties C who may preside over cases with
claims for exemplary damages and, of necessity, disputes involving net-worth
discovery.  They each have different backgrounds, different approaches, and
different dockets.  Those dynamics are likely to produce a highly unpredictable
and idiosyncratic approach to the management of these issues across the state C and history shows us that these are
issues that regularly recur.  I believe parties to litigation in Texas are
entitled to greater clarity and predictability from our courts.  Accordingly, I
would urge that Lunsford be revisited and updated.

 

 

 

/s/        Kent C. Sullivan

Justice

 

 

 

 

Panel
consists of Justices Brown, Boyce, and Sullivan.  (Brown, J., majority)
(Sullivan, J., concurring).

 

 









[1]  Patricia F. Miller, Comment, 2003 Texas House
Bill 4: Unanimous Exemplary Damage Awards and Texas Civil Jury Instructions,
37 St. Mary=s L.J. 515, 529 (2006) (citations omitted); see
Burk, 616 S.W.2d at 922.





[2]  See Act of June 3, 1987, 70th Leg., 1st C.S.,
ch. 2, ' 2.12, 1987 Tex. Gen. Laws 37, 44 (amended 1995 &
2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. '' 41.001B.013
(Vernon 2008 & Supp. 2009)).





[3]  For example, the tort-reform legislation included a
basic cap on exemplary damages.  See Act of June 3, 1987, 70th Leg., 1st
C.S., ch. 2, ' 2.12 sec. 41.007, 1987 Tex. Gen. Laws 37, 46 (amended
1995 & 2003).  In addition, the legislature effectively abrogated the
purely objective method of proving gross negligence.  See Transp. Ins. Co.
v. Moriel, 879 S.W.2d 10, 20 n.11 (Tex. 1994).  However, because this
narrower definition of Agross negligence@
applied only to products-liability cases and certain negligence actions, courts
continued to apply Burk Royalty and Steves Industries to all
other gross-negligence suits.  See J. Stephen Barrick, Comment, Moriel
and the Exemplary Damages Act: Texas Tag-Team Overhauls Punitive Damages,
32 Hous. L. Rev. 1059, 1066 (1995).





[4]  See infra pp. 4B5.





[5]  See Act of
June 2, 2003, 78th Leg., R.S., ch. 204, ''
13.01B.08, 2003 Tex. Gen. Laws 847, 886B89 (current version at Tex. Civ. Prac. & Rem. Code
Ann. '' 41.001B.013
(Vernon 2008 & Supp. 2009)).





[6]  See Miller, supra note 1, at 520
(A[T]he unanimity requirements make it more difficult
for a plaintiff to receive a punitive damage award from a Texas jury.@).





[7]  In fact, some might argue Chapter 41, as currently
constituted, imposes punitive-damage liability only for intentional
torts.  See Tex. Civ. Prac. & Rem. Code Ann. '' 41.001(7), (11), 41.003(a) (authorizing exemplary
damages only for fraud, malice, and gross negligence, where malice requires
proof of Aa specific intent . . . to cause substantial injury or
harm@ and gross negligence similarly mandates a showing of
the defendant=s (1) actual, subjective awareness of an extreme
degree of risk and (2) consciously indifferent decision to proceed
nonetheless).





[8]  Indeed, discovery into a defendant=s net worth may consume a disproportionate amount of
attention inasmuch as net worth is only one among several factors a jury should
consider, and not even the most important factor in reviewing an amount of
punitive damages.  See Tex. Civ. Prac. & Rem. Code Ann. ' 41.011(a) (Vernon 2008); Owens-Corning Fiberglas
Corp. v. Malone, 972 S.W.2d 35, 45B46
(Tex. 1998) (A[T]he degree of reprehensibility of the defendant=s conduct is >[p]erhaps
the most important indicium= of the
reasonableness of a punitive damage award.@)
(quoting BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 575 (1996)).  In
fact, until Lunsford, a defendant=s
net worth was not even listed as a factor for the jury to consider in awarding
punitive damages.  See Lunsford, 746 S.W.2d at 472B73; Alamo Nat=l Bank v. Kraus,
616 S.W.2d 908, 910 (Tex. 1981). Even so, a post-Lunsford jury may still
decide on the amount of punitive damages without considering evidence of the
defendant=s net worth.  See Durban v. Guajardo, 79 S.W.3d
198, 210B11 (Tex. App.CDallas
2002, no pet.).





[9]  Closed corporations and closely-held corporations
may present similar, albeit somewhat less serious, issues.





[10]  See Sears, Roebuck & Co. v. Ramirez, 824
S.W.2d 558, 559 (Tex. 1992) (orig. proceeding).  Of course, the average private
individual is highly unlikely to have audited financial statements readily
available.





[11]  See id.; see also Wal-Mart Stores, Inc. v.
Alexander, 868 S.W.2d 322, 331 (Tex. 1993) (Gonzalez, J., concurring)
(surveying numerous cases precluding discovery into federal income-tax
returns).





[12]  For example, in appropriate cases, some trial courts
use a docket-control order to schedule and hear summary-judgment motions on
predicate exemplary-damage issues in advance of allowing pre-trial discovery on
net worth.  This approach could limit discovery disputes and the potential cost
of compliance to only what is necessarily justified by the facts and claims of
the case.  Similarly, trial courts may wish in certain cases to allow only the
threshold discovery of net-worth amounts by way of limited disclosure at one
stage of pre-trial, and delay discovery as to underlying facts or methods of
calculation of those amounts C potentially
much more invasive and complicated C
until a later point when necessary.