In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-20-00150-CV**

**IN RE ELARA SIGNATURE HOMES, INC., ELARA HOMES, INC., ELARA CONSTRUCTION, INC., AUBREY HALL, AND TEXSTAR HOLDINGS, L.L.C.**

_____

**Original Proceeding**
**410th District Court of Montgomery County, Texas**
**Trial Cause No. 18-09-11899-CV**
_____

**OPINION**

In an original proceeding, a petition for writ of mandamus, the Relators challenge the trial court's order that requires them to respond to the plaintiff's discovery requests—a set of requests to produce served on each defendant that asks them to produce diverse financial records beginning in 2014 to the present. In the lawsuit that led to this proceeding, the plaintiff, Mark Klaus, alleged that five of the defendants negligently built the home he bought from an individual who owned it in 2015. The record shows that Klaus did not purchase the home from the defendants

1

and did not purchase the home when it was new. Yet Klaus seeks to hold the defendants liable to him on claims of negligence and for an alleged breach of the implied warranty of good workmanship, a warranty that is created by a builder on a new home when the agreement between the new home's buyer and the seller does not address the quality of the services the builder rendered and does not reflect how the builder's services are to be performed.[1] The record before us shows that Elara Homes, Inc., one of the Relators in this proceeding, is the entity that built the home where Klaus alleges his injury occurred when he fell down a set of stairs in October 2017.

For the reasons explained more fully below, we hold the discovery requests that Klaus served on Relators is overly broad and not calculated to lead to the discovery of evidence that will be admissible in the trial of his negligence and breach of warranty claims. We conditionally grant the Relators' request for relief from the order, which compelled them to produce records for the periods Klaus designated in his requests.

Background

The record before us shows that Klaus served five defendants—Elara Signature Homes, Inc., Elara Homes, Inc., Elara Construction, Inc., Aubrey Hall,

---

[1] *See Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 58 (Tex. 2013).

2

and Texstar Holdings, L.L.C.—with requests to produce various records that he argues are relevant to the suit. According to Klaus's live pleadings, Hall controls the four companies that he sued. In response to the requests, the Relators filed objections, which assert the documents Klaus was requesting were outside the scope of discovery applicable to his claims and were overly broad given the claims he made and the defenses they had raised to his suit.

Klaus responded to the objections by filing a motion to compel. Following a non-evidentiary hearing, the trial court ordered the Relators to respond to seventeen of Klaus's twenty-eight requests. The order the trial court signed compels the Relators to produce fourteen categories of documents, which we describe below:

(1) the ownership and leases for each Relator relevant to its office space;
(2) the ownership each Relator has of capital equipment;
(3) the ownership interest each Relator has in the other Relators;
(4) the telephone numbers each Relator uses for business purposes;
(5) the operating capital each Relator maintains;
(6) the identities of those with ownership interests in each of the corporate Relators;
(7) the insurance policies each Relator has that might provide coverage against liability claims;
(8) the general ledgers maintained by each of the Relators,
(9) the balance sheets for each of the Relators;
(10) the income statements for each of the Relators;
(11) the monthly and yearly balance sheets, income statements, and cash flow statements for each of the Relators;
(12) the computerized accounting files and loans for each of the Relators;
(13) the corporate documents maintained by each of the Relators; and
(14) the licenses and permits held by each of the Relators.

Klaus's pleadings contain just two claims, one alleging the Relators negligently built the railing on the stairs in Klaus's home. The other asserts the Relators breached the implied warranty of good workmanship they created when building the home. But Klaus's motion to compel and the Relators' responses show that Elara Homes built the home and that Klaus did not purchase the home when it was new. The information in the record shows Klaus bought the home in 2015, which was several years after it was built, and he bought it from an individual he did not sue.

When Klaus asked the trial court to compel responses to his request, he argued that Hall and the companies he sued did not have insurance to cover a judgment should he prevail on his claims. Klaus explained he wanted to discover which of the defendants he sued had engaged in transactions with Elara Homes so he would have evidence to pierce the corporate veils of the companies he sued so he could obtain a judgment that he would be able to execute against Hall. Klaus argues that his pleadings, which allege Hall operated the companies Klaus sued as Hall's alter ego, makes the companies' financial records discoverable in his suit.

While the trial court did not issue findings of fact or conclusions of law, it apparently agreed with Klaus's argument that he was entitled to more than six years of the defendants' financial records. The court ordered the records produced, and the

4

order compelling the Relators to respond is the order that is at issue in the original proceeding they filed here.

Analysis

The scope of discovery in a civil case hinges on what claims the plaintiff alleges in his pleadings and the defenses the defendants pleaded in response. To resolve this proceeding, we must decide whether Klaus's claims for negligence and breach of warranty make the defendants' financial records generally discoverable as part of a lawsuit. Here, Klaus pleaded an alter ego theory, but he did not couple his damages theory with a substantive claim that makes a defendant's financial records relevant, such as a claim for fraud.

Section 21.223(b) of the Business Organizations Code requires alter ego theories to be coupled with a substantive claim alleging actual fraud.[2] The exception the Legislature created to allow parties to pursue veil-piercing theories is narrow, as the exception cannot be used in cases that allege only constructive fraud.[3] In this

---

[2] *See* Tex. Bus. Orgs. Code Ann. § 21.223(b) (providing that to prevail on a corporate alter ego claim, a plaintiff must prove the shareholders of the corporate entity "caused the corporation to be used for the purpose of perpetrating . . . an *actual fraud* on the [plaintiff] primarily for the direct personal benefit of the [shareholder]") (emphasis added).

[3] *See Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006) (noting that without an express agreement by the shareholder making the shareholder personally liable for corporate debts, the plaintiff who seeks to hold a shareholder liable for the corporation's conduct must establish the shareholder used the corporation to perpetrate an actual fraud for the shareholder's benefit); *Viajes Gerpa, S.A. v. Fazeli*, 522 S.W.3d 524, 534-35 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

case, Klaus's pleadings contain no claims alleging fraud, either actual or constructive. Nor does Klaus argue the trial court viewed his alter ego allegations as stating a claim based on conduct that amounted to an actual fraud. Instead, Klaus suggests that the defendants' financial records fall in the scope of discovery in his case because the Relators lack insurance covering a prospective judgment should he prevail. Because they lack insurance, he argues, he needs documents tracing their assets so he can collect the judgment should he prevail.

We disagree with Klaus's argument that the documents he seeks fall within the scope of discovery applicable to the substantive claims his pleadings allege. In his pleadings, Klaus sued the defendants for negligence and for breaching the implied warranty of workmanship, a warranty that is made only by the builder when building a new home. In negligence cases, the jury is not asked whether the defendant will be able to discharge the eventual judgment that might result from the trial. For instance, the pattern jury charge for negligence cases contains no instructions asking the jury to consider whether the defendant has the resources to discharge the judgment. Instead, the charge asks the jury to decide whether each defendant's negligence, if any, proximately caused the plaintiff's injury.[4] If so, the charge then asks: "What sum of money, if paid now in cash, would provide fair and

---

[4] *See* COMMITTEE ON PATTERN JURY CHARGES OF STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 4.1 (2018).

6

reasonable compensation for [the plaintiff's] injuries, if any, that resulted from the occurrence in question?"[5]

The same approach is used to submit breach of warranty claims. First, the charge asks the jury to decide whether the defendant failed to comply with a warranty that was a producing cause of the damages to the plaintiff.[6] If the jury answers that question in the plaintiff's favor, the charge then asks the jury to decide "What sum of money, if any, if paid now in cash, would fairly and reasonable compensate [the plaintiff] for his damages, if any, that resulted from such failure to comply?"[7] And importantly, the instructions accompanying these types of charges do not ask the jury to consider whether the defendant can satisfy the judgment should the plaintiff prevail.[8]

Generally, the seventeen discovery requests at issue here are designed to trace the assets of Elara Homes beginning in 2014. But we fail to see how evidence tracing those assets is relevant to the trial of a negligence and breach of warranty claims. None of the issues in cases based on substantive claims alleging negligence and breach of warranty ask the jury to consider whether the defendants transferred assets

---

[5] *Id*. PJC 28.3.
[6] *Id.* PJC 102.8.
[7] *Id.* PJC 115.3.
[8] *Id*. PJC 1.3, 100.3A; s*ee also Lunsford v. Morris*, 746 S.W.2d 471, 472 (Tex. 1988), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833, 842 (Tex. 1992).

7

between themselves or with others in deciding the case. Simply put, we fail to see how evidence about the assets of the Relators is calculated to be admissible on the substantive claims Klaus's current pleadings assert.[9]

While a substantive claim alleging a defendant actually defrauded Klaus might make some of the financial documents Klaus requested fall within the scope of the discovery the trial court could in that case apply to his claims, Klaus's pleadings do not include claims alleging fraud. Moreover, absent an express agreement by a shareholder promising to pay a corporate debt exists or claims alleging actual fraud, the general rule is that a company's shareholders have no personal liability for the liabilities the company may create.[10]

We conclude the discovery order at issue exceeds the appropriate scope of discovery as it applies to Klaus's claims under Rule 192.3, which allows a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party."[11] And even if the trial court erroneously construed Klaus's pleadings to be sufficient to include a substantive claim alleging fraud, the discovery that Klaus served on the Relators is

---

[9] *See Menetti v. Chavers*, 974 S.W.2d 168, 175 (Tex. App.—San Antonio 1998, no pet.).

[10] *See Willis*, 197 S.W.3d at 272; Tex. Bus. Orgs. Code Ann. § 21.223.

[11] Tex. R. Civ. P. 192.3; *see also In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding).

still far too broad. His requests for documents encompass several years before Klaus bought the home. The discovery in a fraud case, however, must focus on the evidence that is calculated to show how the Relators actually defrauded Klaus. Since Klaus did not buy the home from the defendants and Elara Homes is the entity that built the home, we cannot explain why any documents before Relators learned of Klaus's injury and that he intended to sue are within the scope of discovery that is relevant to possible claims alleging actual fraud.[12] Thus, as phrased, Klaus's requests for documents seeks discovery that fall far outside the scope of discovery that would apply to a fraud claim, should one be made.

Next, we address Klaus's request asking Relators to produce their liability insurance policies from 2014 to the present. The Texas Rules of Procedure allow parties to discover whether a defendant has insurance coverage that applies to a claim even though evidence about insurance will not be admissible in the trial.[13] Yet Klaus asked Relators to produce policies in years wholly unrelated to his injury, so we fail to see how those policies are discoverable or relevant to his injury, which occurred in October 2017. Simply put, Klaus's requests for insurance policies are also far too

---

[12] Tex. R. Civ. P. 192.3(a).

[13] *Id.* 192.3(f) (providing generally, that indemnity and insurance agreements under which a carrier may be liable to satisfy a judgment discoverable, but explaining that such agreements are not, because of their disclosure, "admissible in evidence at trial").

broad since they seek liability policies that do not arguably apply to any potential judgment in the suit.[14]

Because plaintiffs often couple fraud claims with claims for punitive damages, we also address what discovery is available since punitive damages claims allow trial courts to allow plaintiffs to discover limited information about a defendant's net worth.[15] Under Texas law, plaintiffs suing for punitive damages may discover evidence about a defendant's net worth, but they may do so only by using the least burdensome method that is available for that purpose.[16] Should Klaus amend his pleadings and allege a claim for punitive damages, his discovery must ask the Relators to produce evidence of their net worth by using the least burdensome means.[17] For example, he should seek to discover each Relator's last audited balance sheet or file a notice asking the defendants to produce a corporate representative to provide a short deposition to address each Relator's net worth. Even then, before a trial court may allow such discovery, the plaintiff must produce evidence and the trial court must find a substantial likelihood exists to show the plaintiff has a

---

[14] *Id.*

[15] *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0115(a) (allowing discovery of net worth evidence on exemplary damages claims when "the court finds in a written order that the claimant has demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages").

[16] *See id.* art. 41.0115(b); *Lunsford*, 746 S.W.2d at 472.

[17] *Id.*

substantial likelihood of prevailing on the prospective punitive damages claim.[18] The required finding and the evidence needed to show whether Klaus is substantially likely to prevail are not in the record before us here.[19]

Last, we address the scope of discovery available to parties when a plaintiff sues a defendant alleging the defendant transferred assets in violation of the Uniform Fraudulent Transfer Act.[20] Here, given the elements that apply to such claims, we fail to see how transactions that involved transactions years before Elara Homes built the house, before Klaus bought it, and before Klaus placed the Relators on notice of his claims would be relevant to a claim under the Uniform Fraudulent Transfer Act.[21] Klaus's discovery requests are far too broad even if the trial court erroneously construed Klaus's pleadings to include claims alleging violations of that Act.

While we could narrow the order the trial court issued, we choose not to do so here. While the court reviewing a discovery dispute may choose to engage in the battlefield triage, Klaus is the party that has the duty to propound proper discovery that complies with the rules governing discovery in the first instance. Should he

---

[18] Tex. Civ. Prac. & Rem. Code Ann. § 51.0115(a).

[19] *See In re GMAC Direct Ins. Co.*, No. 09–10–00493–CV, 2010 WL 5550672, at *2 (Tex. App.—Beaumont Dec. 30, 2010, orig. proceeding) (mem. op.).

[20] *See, e.g.*, Tex. Bus. & Com. Code Ann. § 24.005(b)(4), (9).

[21] *Id.*

11

decide to amend his pleadings and to propound additional discovery, we will leave it to Klaus's attorneys to comply with the applicable rules.[22]

We hold the trial court abused its discretion by granting Klaus's motion to compel.[23] We conditionally grant Relators' petition and lift the stay order that we issued to stop the proceedings in the trial court pending our resolution of the parties' dispute. We are confident the trial court will vacate its March 2020 order and replace it with an order denying Klaus's motion to compel. For that reason, we will not issue the writ and will do so only should the trial court fail to comply with the opinion we issue today. The Relators' petition for mandamus is

CONDITIONALLY GRANTED.

PER CURIAM

Submitted on June 15, 2020
Opinion Delivered September 3, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.

---

[22] *In re TIG Ins. Co.*, 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, orig. proceeding).

[23] *See* Tex. R. Civ. P. 192.3(a) (requiring discovery to be relevant to the subject matter of the pending action as it relates to a party's claim or defense).